**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-4401**

UNITED STATES OF AMERICA,

              Plaintiff – Appellee,

     v.

OTIS LEE STITT,

              Defendant – Appellant.

Appeal from the United States District Court for the Eastern
District of Virginia, at Norfolk.  Robert G. Doumar, Senior
District Judge.  (2:08-cr-00108-RGD-TEM-1)

Argued:  May 14, 2010           Decided:  June 8, 2010

Before WILKINSON, NIEMEYER, and SHEDD, Circuit Judges.

Affirmed by unpublished opinion.  Judge Shedd wrote the opinion,
in which Judge Wilkinson and Judge Niemeyer joined.

**ARGUED:** Jon Michael Babineau, RIDDICK BABINEAU, PC, Norfolk,
Virginia, for Appellant.  Elizabeth Bartlett Fitzwater, OFFICE
OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.
**ON BRIEF:** Dana J. Boente, United States Attorney, Alexandria,
Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

A federal grand jury indicted Otis Lee Stitt on five drug and firearm charges. Pursuant to his conditional guilty pleas on four of the counts against him, Stitt now appeals the denial of his pretrial suppression motion. We affirm.


I

At approximately 2 a.m. on February 29, 2008, Portsmouth, Virginia, Police Officer Hawes observed a blue Acura traveling on Portsmouth Boulevard at 67 miles per hour in a posted 35 miles per hour zone. As Officer Hawes pulled in behind the Acura to make a traffic stop, he saw the driver and sole occupant, later identified as Stitt, make a lifting motion above the center console. Stitt then pulled the Acura into the parking lot of a "gentleman's club" named Magik City, which is in a high-crime area. Stitt parked the Acura across multiple parking spaces in a manner that blocked vehicular traffic within the parking lot.

Once parked, Stitt exited the Acura. In doing so, he shut and locked the door behind him, leaving the keys plainly visible on the floorboard. Officer Hawes instructed Stitt to return inside the Acura, but he refused.

As Officer Hawes inspected Stitt's license and began to issue traffic summonses for reckless driving and driving with a

2

suspended license, other Portsmouth police officers (acting as backup) stood with Stitt outside the Acura. Throughout this time, Stitt repeatedly placed his hands in his pockets, fidgeted, and glanced around. After one of the officers instructed him to stop moving his hands, Stitt reached into his pocket and removed a knotted plastic baggie. He placed the baggie into his mouth, bit off the end, and discarded the remainder on the ground. The officer then attempted to place Stitt into investigative detention, but Stitt broke free and ran from the scene. During the ensuing foot-chase, Stitt ran into and over a Magik City employee, causing the employee to strike his head on the concrete. The officers eventually apprehended Stitt several hundred feet from the Acura, and they placed him under arrest in the back of one of the police cars for driving with a suspended license, obstruction of justice, and simple assault.

After Stitt was arrested, Officer Hawes observed the Acura keys in plain view on the vehicle floor, and he unsuccessfully attempted to open the Acura. At this point, Officer Hawes decided to impound the Acura, and he called for a tow-vehicle and a lockout kit. When the tow-vehicle arrived, Officer Hawes used the lockout kit to unlock the Acura, and he searched it, finding in the center console a loaded .45 caliber handgun and

what he believed to be numerous individually packaged rocks of crack cocaine.

The Portsmouth Police Department General Orders Manual provides in a section titled "Towing and Impounding of Vehicles" that the department "may tow or impound a vehicle for investigative purposes, to protect the vehicle and its contents, and other public safety concerns." J.A. 28. This section defines "impound" as "[a]ny vehicle that is taken by a wrecker to the City of Portsmouth Vehicle Impound lot," J.A. 28, and it sets forth situations in which a vehicle is normally impounded, including vehicles that "are illegally parked and require immediate removal," J.A. 29. In a section titled "Vehicle Searches and Inventories," the Manual states that the department "will inventory the contents of all vehicles impounded for any reason." J.A. 32.

II

Based on the February 29 traffic stop, Stitt was indicted on four counts: (1) using and carrying a firearm during and in relation to a drug trafficking crime; (2) possession with intent to distribute cocaine base; (3) possession with intent to distribute cocaine hydrochloride; and (4) being a felon in possession of a firearm. He was also indicted on a separate count of possession with intent to distribute cocaine base.

4

Before trial, Stitt moved to suppress the evidence obtained by the police during the traffic stop, contending that the warrantless search of the Acura violated his rights under the Fourth Amendment. Specifically, he argued that there was insufficient cause for the police to detain him and, therefore, the search incident to his arrest was unlawful. He also argued that the impoundment and inventory search of the Acura was merely a pretext for an investigatory search. Following an evidentiary hearing, the district court rejected both of Stitt's arguments and denied the suppression motion.

Having lost the suppression motion, Stitt (with the consent of the government and the district court) conditionally pled guilty to the four counts arising from the traffic stop. He also pled guilty (unconditionally) to the fifth count of the indictment. The district court sentenced him to 180 months of imprisonment.

III

In considering an appeal from the denial of a suppression motion, we review a district court's findings of fact for clear error, and we construe the evidence in the light most favorable to the government. United States v. Colonna, 511 F.3d 431, 434 (4th Cir. 2007). We review the district court's legal conclusions de novo. Id.

5

Stitt contends, as he did below, that the search of the Acura violated the Fourth Amendment because it was neither a proper search incident to his arrest nor a proper inventory search. In response, the government presents several bases it contends warrant affirmance. Although we likely could affirm the denial of the suppression motion on any of the bases presented by the government, we need only address one: the inventory search of the Acura.

"The Fourth Amendment generally requires police to secure a warrant before conducting a search." Maryland v. Dyson, 527 U.S. 465, 466 (1999). One exception to the warrant requirement arises when a proper inventory search is conducted. United States v. Banks, 482 F.3d 733, 738-39 (4th Cir. 2007). "An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." Whren v. United States, 517 U.S. 806, 811 n.1 (1996). To be valid, an inventory search must be conducted in good-faith according to standardized criteria, such as a police-department uniform inventory search policy, and this criteria "must curtail the discretion of the searching officer so as to prevent searches from becoming 'a ruse for a general rummaging in order to

6

discover incriminating evidence.'" Banks, 482 F.3d at 739 (quoting Florida v. Wells, 495 U.S. 1, 4 (1990)).

The district court found that Officer Hawes acted reasonably in impounding the Acura. The court further found that he followed standardized department procedure in searching the Acura and that there is no evidence that the search was merely a pretext to discover incriminating evidence. These findings are amply supported by the record, as the undisputed evidence establishes that Stitt was validly arrested, the Acura was parked in a high-crime area in a manner that blocked traffic in the parking lot, the keys were plainly visible on the Acura floor, and the Portsmouth Police Department General Orders Manual mandates an inventory search of all impounded vehicles.

Stitt makes much of the fact that Officer Hawes testified that he believed when he began the search there was contraband in the center console of the Acura, arguing that this testimony proves that the search was for the purpose of obtaining incriminating evidence. Given the fact that Officer Hawes had observed Stitt appear to close the center console as he was being pulled over, as well as the fact that a search of the Acura incident to the arrest was permissible at the time of the arrest (i.e., before Arizona v. Gant, 129 S. Ct. 1710 (2009)), it is not at all surprising that the officer would have begun the search in the console. In any event, simply because Officer

7

Hawes might have had additional legal grounds to search the Acura apart from the inventory search does not render the inventory search invalid. See, e.g., United States v. Matthews, 591 F.3d 230, 235 n.7 (4th Cir. 2009) (noting that an officer's suspicion that contraband may be present in the vehicle does not invalidate an otherwise lawful inventory search); United States v. Stephens, 350 F.3d 778, 780 (8th Cir. 2003) (holding that the vehicle search "was properly conducted, both as an inventory search and a search incident to arrest").

Based on the foregoing, the district court did not err in concluding that the incriminating evidence was seized during a lawful inventory search. Therefore, we affirm the order denying the suppression motion. See, e.g., United States v. Ford, 986 F.2d 57 (4th Cir. 1993) (holding that police lawfully impounded and conducted an inventory search of a vehicle after a traffic stop); United States v. Brown, 787 F.2d 929 (4th Cir. 1986) (holding that police lawfully impounded and conducted an inventory search of a vehicle parked in a private parking lot because there was no known individual immediately available to take custody of the automobile and because it could have constituted a nuisance in the area in which it was parked).

8

IV

The order of the district court denying the suppression motion is affirmed.

AFFIRMED