2011 ND 242

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Andrew Philip MITTLEIDER, Defendant and Appellant.**

**State of North Dakota, Plaintiff and Appellee,**

v.

**Ricky Lee Mittleider, Defendant and Appellant.**

Nos. 20110203, 20110204.

Supreme Court of North Dakota.

Dec. 22, 2011.

Eric B. Hetland, State's Attorney, Steele, N.D., for plaintiff and appellee.

Monte L. Rogneby (argued) and Christopher E. Rausch (on brief), Bismarck, N.D., for defendants and appellants.

VANDE WALLE, Chief Justice.

[¶1]   In consolidated appeals, Andrew Mittleider appealed from the district court judgment entered upon his conditional plea of guilty to the charges of illegal hunting, taking, attempting to take, or possession of big game, and hunting in a closed or restricted area, and Ricky Mittleider appealed from the district court judgment entered upon his conditional plea of guilty to the charge of hunting in a closed or restricted area.   We affirm.

## I.

[¶2]   This appeal was submitted on the following stipulated facts.   In 2010, the Mittleiders obtained the appropriate tags and licenses for the deer hunting season, which opened at noon on November 5, 2010.   That morning, the Mittleiders observed deer and went to a location they believed was outside the Lake George Wildlife Refuge.   The refuge is not prop-

erly signed as specified by the United States Fish and Wildlife Service Sign Manual, which requires two signs be posted at every boundary. When the season opened at noon, Andrew Mittleider shot a deer that was later discovered to be on the refuge. The Mittleiders loaded the deer into Ricky Mittleider's pickup and brought it to the farmstead.

[¶ 3] A short time later, Deputy Sheriff Lemiux entered the Mittleider farmstead without permission and without a search warrant. The stipulated facts do not reflect why Deputy Lemiux came to the farmstead. The Mittleiders have two "no trespassing" signs posted near the entrance to the farmstead, although it is unclear from the record exactly where the signs were located. When Deputy Lemiux arrived, the pickup was 207 feet from the public right-of-way. Several people were standing by the back of the pickup, and Deputy Lemiux left his patrol car, walked over to and looked inside the pickup box, and saw the deer. The deer was removed from the pickup and placed in the yard by the Mittleiders. Deputy Lemiux called Game Warden Myhre.

[¶ 4] Game Warden Myhre also received a report from Tom Nienow stating he had seen a hunter on the refuge and that a member of the Mittleider hunting party had shot a big buck. Game Warden Myhre then went to the Mittleider farmstead and entered without permission and without a search warrant. Game Warden Myhre observed the deer lying on the ground, and Andrew Mittleider stated he shot the deer and confirmed the location where the deer was shot. Game Warden Myhre went to the refuge and determined, using a GPS device, that the deer was shot on the refuge. He later met with the State's Attorney and they applied for a search warrant to seize the deer, the weap-

on used to shoot the deer, and photos of the deer, which was granted.

[¶ 5] The Mittleiders moved to suppress all evidence, asserting Deputy Lemiux and Game Warden Myhre violated their reasonable expectation of privacy by entering the farmstead because they had two "no trespassing" signs posted near the entrance. The Mittleiders also filed a motion in limine to submit evidence at trial of the affirmative defense of mistake of fact—they reasonably believed they were not hunting on the refuge because the refuge's signs were not properly posted. The district court denied the motion to suppress because it determined Deputy Lemiux and Game Warden Myhre had legitimate business to enter, and any member of the public would have entered in the same manner as the officers because there was not a "no trespassing" sign immediately to the edge of the road or in the area immediately surrounding the residence. The court denied the motion to submit evidence of an affirmative defense, stating the offenses at issue were strict liability offenses, only in rare cases are affirmative defenses permitted for strict liability offenses, and this was not a rare case.

II.

[¶ 6] The Mittleiders argue the district court erred in denying their motion in limine to introduce evidence of mistake of fact to the jury. They argue, although the offenses charged are strict liability offenses, they should have been allowed to present evidence of mistake of fact based on public policy because hunting is a constitutionally protected right in North Dakota, *see* N.D. Const. art. XI, § 27, and they note affirmative defenses to strict liability offenses have been permitted in certain circumstances.

[¶ 7] We review a district court's decision on a motion in limine un-

der the abuse-of-discretion standard. *State v. Kleppe*, 2011 ND 141, ¶ 8, 800 N.W.2d 311. "A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or it misinterprets or misapplies the law." *State v. Pixler*, 2010 ND 105, ¶ 7, 783 N.W.2d 9.

[¶ 8] The Mittleiders were charged with hunting in a closed or restricted area and illegal hunting, taking, attempting to take, or possession of big game, which are strict liability offenses. *See* N.D.C.C. §§ 20.1–05–02, 20.1–08–01; *State v. Olson*, 2003 ND 23, ¶ 11, 656 N.W.2d 650 (noting a criminal statute without a culpability requirement is a strict liability offense). "Strict liability does not necessarily preclude affirmative defenses, but an affirmative defense will rarely apply." *State v. Ness*, 2009 ND 182, ¶ 15, 774 N.W.2d 254; *see Olson*, at ¶ 11 (noting an affirmative defense of unwitting, innocent, or mistaken conduct may be presented when a defendant is charged with violating a domestic violence protection order under N.D.C.C. § 14–07.1–06); *State v. Brandner*, 551 N.W.2d 284, 287 (N.D. 1996) (holding affirmative defense of unwitting or unknowing possession applicable to prosecution for possession of illegal fishtraps); *State v. Rasmussen*, 524 N.W.2d 843, 845 (N.D.1994) (allowing affirmative defense to driving under suspension charge if life-threatening circumstances compelled the offense); *State v. Michlitsch*, 438 N.W.2d 175, 178 (N.D.1989) (allowing affirmative defense to possession of controlled substance charge when defendant claimed she unwittingly possessed the controlled substance, *superseded by statute*, N.D.C.C. § 19–03.1–23(1)).

[¶ 9] Recently, we concluded defendants charged with unlawfully hunting and shooting big game were not entitled to jury instructions on the defenses of excuse and mistake of law. *Kleppe*, 2011 ND 141, ¶¶ 23, 26, 800 N.W.2d 311. We held the defense of excuse was inappropriate because justification permitted by N.D.C.C. § 12.1–05–06 contemplated force against a person, not against deer. *Id.* at ¶ 22. We held a mistake of law defense was unavailable because unlawfully hunting and shooting big game is a strict liability offense, and "when the offense is a strict liability offense, a mistaken belief of the law is generally precluded because the offense does not contain a culpability requirement." *Id.* at ¶ 25. We also concluded the case was not a rare case when an affirmative defense should be applied to a strict liability offense. *Id.*

[¶ 10] This Court has recognized affirmative defenses to strict liability offenses when public policy factors support the defenses or when the defense is "a logical accommodation which recognizes the reasons for both the legislative designation of the crimes as strict liability offenses and the constitutional interests of the accused." *State v. Holte*, 2001 ND 133, ¶ 11, 631 N.W.2d 595 (quoting *Michlitsch*, 438 N.W.2d at 178). The Mittleiders contend public policy factors support their affirmative defense because a citizen's right to hunt is constitutionally protected in North Dakota, *see* N.D. Const. art. XI, § 27, it is undisputed that the refuge was not properly signed, and the district court specifically found the Mittleiders were unaware they were within the boundaries of the refuge.

[¶ 11] This is not a rare case in which public policy factors support presentment of an affirmative defense to strict liability offenses. The Mittleiders implicitly acknowledged they were aware they were hunting near the refuge and it was illegal to shoot a deer on the refuge, and only contend they were uncertain of the exact boundaries of the refuge. The Mittleiders could have determined the boundaries of the refuge before the deer was shot. We

hold the district court did not abuse its discretion in denying the Mittleiders' motion to present evidence of mistake of fact.

### III.

[¶ 12] The Mittleiders argue the district court erred in denying their motion to suppress because law enforcement violated their privacy rights by entering their farmstead in spite of posted "no trespassing" signs.

[¶ 13] When reviewing a district court decision on a motion to suppress evidence, we defer to the district court's factual findings and will affirm the decision if "there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence." *State v. Graf,* 2006 ND 196, ¶ 7, 721 N.W.2d 381 (quoting *City of Fargo v. Thompson,* 520 N.W.2d 578, 581 (N.D. 1994)). Whether a finding of fact meets a legal standard is a question of law, and questions of law are fully reviewable on appeal. *Graf,* at ¶ 7.

[¶ 14] Citizens are protected from unreasonable searches and seizures under the Fourth Amendment of the United States Constitution, which is applicable to the states through the Fourteenth Amendment, and under art. I, § 8 of the North Dakota Constitution. *City of Fargo v. Steffan,* 2002 ND 26, ¶ 8, 639 N.W.2d 482. A search does not occur unless the government violates an individual's reasonable expectation of privacy. *State v. Dunn,* 2002 ND 189, ¶ 4, 653 N.W.2d 688. If an individual has a reasonable expectation of privacy in an area, the government must obtain a warrant prior to conducting a search unless an exception to the warrant requirement applies. *Id.* "Whether an individual has a reasonable expectation of privacy is reviewed de novo." *State v. Kochel,* 2008 ND 28, ¶ 6, 744 N.W.2d 771.

[¶ 15] We have recognized the distinction between curtilage and open fields in determining whether a person has a reasonable expectation of privacy. *See State v. Larson,* 343 N.W.2d 361, 363 (N.D. 1984). Curtilage has been defined "as that area near a dwelling, not necessarily enclosed, that generally includes buildings or other adjuncts used for domestic purposes." *Id.* Open fields, where such "intimate activities" do not take place, fall outside the curtilage. *Oliver v. United States,* 466 U.S. 170, 179–80, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). We have held "police with legitimate business may enter certain areas surrounding a home where persons may have a reasonable expectation of privacy, such as curtilage, but which are 'impliedly open to use by the public.'" *State v. Winkler,* 552 N.W.2d 347, 352 (N.D.1996) (quoting *State v. Crea,* 305 Minn. 342, 233 N.W.2d 736, 739 (1975)). "Officers are allowed to knock on a residence's door or otherwise approach the residence seeking to speak to the inhabitants just as any private citizen may." *State v. Beane,* 2009 ND 146, ¶ 10, 770 N.W.2d 283 (quoting *Estate of Smith v. Marasco,* 318 F.3d 497, 519 (3d Cir.2003)). In denying the motion to suppress, the district court specifically noted:

> Any member of the public, from a neighbor stopping by for unannounced or uninvited visit, to a UPS truck delivering a gift which the Mittleiders did not know was coming would have entered upon Mittleiders' property in the same manner the officers did. While there may have been "No Trespass" signs surrounding the property, this Court was provided with no evidence that there was a gate with a "no trespass" sign across the road, that there was a "no trespass" sign mounted on a post or immediately to the edge of the road, or

that there were any "no trespass" signs posted on a fence or in the area immediately surrounding the residence. Thus, there is nothing concerning the officers' initial entry into Mittleiders' yard which would trigger the protections of either the Fourth Amendment or Article 1, § 8 of the North Dakota Constitution. The district court seemingly determined the "no trespassing" signs were insufficient to alert the public that the entrance of the farmstead was a private area. Because a private individual who entered their farmstead without permission would be guilty of criminal trespass, the Mittleiders assert the law enforcement officers' entrance violated their reasonable expectation of privacy. However, peace officers discharging their official duties are exempt from North Dakota's criminal trespass statute. N.D.C.C. § 12.1–22–03(5). Additionally, simply because an intrusion is a trespass at common law does not make the intrusion a search for constitutional purposes. *Oliver*, 466 U.S. at 183, 104 S.Ct. 1735.

[¶ 16] The Mittleiders acknowledge that "no trespassing" signs in open fields do not create an increased expectation of privacy under the United States Constitution. *See Kochel*, 2008 ND 28, ¶ 9, 744 N.W.2d 771 (citing *Oliver*, 466 U.S. at 179, 104 S.Ct. 1735). The Mittleiders encourage this Court to determine the North Dakota Constitution provides additional protection because "[o]n private property in rural North Dakota, an individual's expectation of privacy is not limited to the curtilage directly surrounding a house, but rather envelopes much of the land." The North Dakota Constitution may afford broader individual rights than those granted under its federal counterpart. *State v. Rydberg*, 519 N.W.2d 306, 310 (N.D.1994). "[L]ike the Fourth Amendment, 'Art. I, § 8 of the North Dakota Constitution is not implicated unless a reasonable expecta-

tion of privacy is invaded.'" *Id.* (quoting *State v. Rode*, 456 N.W.2d 769, 771 (N.D. 1990)).

[¶ 17] We have recognized that a "no trespassing" sign posted on a structure, particularly a residence, indicates a reasonable expectation of privacy. *See Kochel*, 2008 ND 28, ¶ 9, 744 N.W.2d 771. In *Kochel*, the defendant had a "no hunting or trespassing" sign posted on the steps outside his mobile home addition. *Id.* We noted "[a]ny uncertainty that the addition is an *integral part of the home* where privacy is reasonably expected is removed by the presence of the sign." *Id.* (emphasis added). The "no trespassing" sign in *Kochel* is distinguishable from the "no trespassing" signs at issue here. In *Kochel*, the defendant posted a "no trespassing" sign on the steps immediately outside of a fully enclosed addition to his mobile home. *Id.* Here, the Mittleiders posted "no trespassing" signs around their farmstead, and it is unclear from the record how closely the signs were posted to the entrance. The district court noted any member of the public would have entered the farmstead in the same manner the officers did, and there was no evidence "that there was a 'no trespass' sign mounted on a post or immediately to the edge of the road[.]" We decline to adopt the Mittleiders' broad argument that, on rural property in North Dakota, an individual's expectation of privacy "envelopes much of the land." We hold the "no trespassing" signs posted around the Mittleiders' farmstead did not create a reasonable expectation of privacy in the entrance of the farmstead. Because a reasonable expectation of privacy was not invaded, art. I, § 8 of the North Dakota Constitution is not implicated and we need not determine if it provides broader protection than its federal counterpart. *Rydberg*, 519 N.W.2d at 310.

## IV.

[¶ 18] We affirm the district court judgments.

[¶ 19] DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, JJ., JOHN C. McCLINTOCK, JR., D.J., concur.

[¶ 20] The Honorable JOHN C. McCLINTOCK, JR., D.J., sitting in place of KAPSNER, J., disqualified.