2013 ND 252

**STATE of North Dakota, Plaintiff and Appellant**

v.

**Matthew D. NGUYEN, Defendant and Appellee.**

No. 20130159.

Supreme Court of North Dakota.

Dec. 26, 2013.

Gary E. Euren, Assistant State's Attorney, Fargo, ND, for plaintiff and appellant.

Mark Allan Friese, Fargo, ND, for defendant and appellee.

MARING, Justice.

[¶ 1] The State appeals from the trial court's order granting Matthew Nguyen's motion to suppress evidence found as a result of the search warrant in his criminal prosecution for possession of marijuana with intent to deliver and drug paraphernalia. We hold the law enforcement officer's use of a drug-sniffing dog in a secure apartment hallway did not violate Nguyen's Fourth Amendment rights against unreasonable search and seizure. We reverse and remand.

I

[¶ 2] The facts of this case do not appear to be in dispute. On November 8, 2012, law enforcement officers were dispatched to 2599 Villa Drive South, Fargo, North Dakota, after a tenant reported smelling marijuana on the second floor of the apartment building. The officers were unable to pinpoint the source of the odor so the building was added to a list of properties to be investigated further. On December 9, 2012, Officer Shane Aberle, of the narcotics division, and Officer George Vinson, of the canine unit, conducted further investigation. The officers were not in uniform and they brought Earl, a drug-sniffing dog.

[¶ 3] Access to the apartment building located at 2599 Villa Drive South is restricted. Both main entrances are locked at all times. The tenants are given keys, guests may gain access if a tenant electronically opens the door, and the fire department has been given access to a lockbox that contains a key. The tenants of the apartment building share secured, common hallways. In this shared space, personal property, such as shoes, bikes, and door craftwork, is present. Officer

Aberle gained access by catching the door before it closed when an unidentified female was either entering or leaving. Officer Aberle and the unidentified female did not communicate. Officer Aberle signaled Officer Vinson and Earl, who were still in the vehicle, to join him. Officer Vinson planned to take Earl to the second floor hallway where the odor had earlier been reported. People were present in the second floor hallway; therefore, Officer Vinson took Earl to the third floor hallway and conducted a sweep that detected nothing. Officer Vinson then took Earl to the second floor hallway. Earl was quickly drawn to the door of unit 214 and alerted.

[¶ 4] The officers used this information to obtain a search warrant, which was executed on December 12, 2012. The officers seized approximately one-half pound of marijuana, paraphernalia including a snort tube, two digital scales, a grinder, two glass bongs, two glass pipes, and $2,433 in cash, which were all attributed to Nguyen. Nguyen made incriminating statements when questioned.

[¶ 5] On January 28, 2013, Nguyen was charged with possession of marijuana with intent to deliver and drug paraphernalia. Nguyen moved to suppress the evidence arguing the warrantless sweep of the apartment building that formed the basis for the search warrant constituted an illegal search. Nguyen alternatively argued suppression of the evidence was appropriate because the successive searches were constitutionally unreasonable. On April 29, 2013, an evidentiary hearing was held. The trial court granted the motion to suppress, and the State appeals.

II

[¶ 6] On appeal, the State asserts the trial court erred in granting Nguyen's motion to suppress. The State argues the use of a drug-sniffing dog in the common hallway of a secured apartment building did not constitute an illegal search under the federal or state constitutions.

[¶ 7] Our standard of review regarding a trial court's decision to grant or deny a motion to suppress is well established. *State v. Morin*, 2012 ND 75, ¶ 5, 815 N.W.2d 229.

"This Court defers to the district court's findings of fact and resolves conflicts in testimony in favor of affirmance. This Court will affirm a district court decision regarding a motion to suppress if there is sufficient competent evidence fairly capable of supporting the district court's findings, and the decision is not contrary to the manifest weight of the evidence. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law."

*Id.* (quoting *State v. Johnson*, 2009 ND 167, ¶ 6, 772 N.W.2d 591). This Court reviews violations of constitutional rights de novo. *State v. Jones*, 2011 ND 234, ¶ 11, 817 N.W.2d 313.

[¶ 8] "The Fourth Amendment of the United States Constitution, made applicable to the States by the Fourteenth Amendment, and Article [I], Section 8 of the North Dakota Constitution, prohibit unreasonable searches and seizures." *State v. Dunn*, 2002 ND 189, ¶ 4, 653 N.W.2d 688. Violations of the Fourth Amendment are not solely measured by property rights. *Florida v. Jardines*, —— U.S. ——, 133 S.Ct. 1409, 1414, 185 L.Ed.2d 495 (2013) (citing *Soldal v. Cook County*, 506 U.S. 56, 64, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992)). The Fourth Amendment also "protects individual privacy against certain kinds of governmental intrusion" but "cannot be translated into a general constitutional 'right to privacy.'" *Katz v. United States*, 389 U.S. 347, 350,

88 S.Ct. 507, 19 L.Ed.2d 576 (1967). People, not places, are protected by the Fourth Amendment. *Id.* at 351, 88 S.Ct. 507. Yet, to determine what protections the Fourth Amendment offers people "requires reference to a 'place.'" *Id.* at 361, 88 S.Ct. 507 (Harlan, J., concurring). "A search does not occur unless the government violates an individual's reasonable expectation of privacy." *State v. Mittleider*, 2011 ND 242, ¶ 14, 809 N.W.2d 303. An individual's reasonable expectation of privacy has two requirements: "[F]irst that a person ha[s] exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Katz*, at 361, 88 S.Ct. 507 (Harlan, J., concurring). "If an individual has a reasonable expectation of privacy in an area, the government must obtain a warrant prior to conducting a search unless an exception to the warrant requirement applies." *Mittleider*, at ¶ 14.

[¶ 9] To determine whether a legitimate expectation of privacy exists, "the person challenging the search has the burden of showing both a subjective expectation of privacy and that the expectation is objectively reasonable; that is, one that society is willing to accept." *United States v. Mendoza*, 281 F.3d 712, 715 (8th Cir. 2002) (citation omitted). Several factors that contribute to determining whether a legitimate expectation of privacy exists include: "[W]hether the party has a possessory interest in the things seized or the place searched; whether the party can exclude others from that place; whether the party took precautions to maintain the privacy; and whether the party had a key to the premises." *Id.* The Eighth Circuit Court of Appeals has consistently held that tenants of multifamily dwellings do not have a legitimate expectation of privacy in common or shared areas. *Id.* (holding the

defendant had no legitimate expectation of privacy in duplex vestibule); *see United States v. McCaster*, 193 F.3d 930 (8th Cir. 1999) (holding the defendant had no legitimate expectation of privacy in a duplex hallway's closet); *United States v. McGrane*, 746 F.2d 632 (8th Cir.1984) (holding the defendant had no legitimate expectation of privacy in a basement storage locker in a multifamily dwelling, to which other residents had access); *United States v. Luschen*, 614 F.2d 1164 (8th Cir. 1980) (holding the defendant had no legitimate expectation of privacy in a landing of a secure apartment building); *United States v. Eisler*, 567 F.2d 814 (8th Cir. 1977) (holding the defendant had no legitimate expectation of privacy in a conversation that took place in a hallway of a secure apartment building). Other circuit courts of appeals agree. *See United States v. Cruz Pagan*, 537 F.2d 554 (1st Cir.1976) (holding the defendant had no legitimate expectation of privacy in parking garage of condominium); *United States v. Holland*, 755 F.2d 253 (2nd Cir. 1985) (holding the defendant had no legitimate expectation of privacy in common hallway of secured apartment building); *United States v. Acosta*, 965 F.2d 1248 (3rd Cir.1992) (holding the defendant had no legitimate expectation of privacy in hallway of apartment building); *United States v. Concepcion*, 942 F.2d 1170 (7th Cir.1991) (holding the defendant had no legitimate expectation of privacy in common area of apartment building); *United States v. Nohara*, 3 F.3d 1239 (9th Cir.1993) (holding the defendant had no legitimate expectation of privacy in hallway of secured apartment building and refusing to extend *United States v. Fluker*, 543 F.2d 709 (9th Cir.1976)). The Sixth Circuit is currently the only circuit that recognizes a reasonable expectation of privacy in the hallway or common areas of a locked apartment building. *See United States v. Carriger*,

541 F.2d 545 (6th Cir.1976). "A number of other states have since adopted what now appears to be the majority position among the states which have considered the question." *State v. Talley,* 307 S.W.3d 723, 732 (Tenn.2010) (holding the defendant had no legitimate expectation of privacy in hallway of secured condominium) (citing *People v. Lyles,* 332 Ill.App.3d 1, 265 Ill.Dec. 591, 772 N.E.2d 962 (2002) (holding the defendant had no legitimate expectation of privacy in back porch of apartment building); *Commonwealth v. Dora,* 57 Mass. App.Ct. 141, 781 N.E.2d 62 (2003) (holding the defendant had no legitimate expectation of privacy in hallway and lock of apartment door of secured apartment building); *State v. Davis,* 711 N.W.2d 841 (Minn.Ct.App.2006) (holding the defendant had no legitimate expectation of privacy in common hallway of secured apartment building); *Commonwealth v. Reed,* 851 A.2d 958 (Pa.Super.Ct.2004) (holding the defendant had no legitimate expectation of privacy in hallway and stairs of secured apartment building)).

 [¶ 10] The locked and secured entrance of Nguyen's apartment building was designed to provide security for the tenants of the apartment building rather than to provide privacy in the common hallways. *See Eisler,* 567 F.2d at 816. "An expectation of privacy necessarily implies an expectation that one will be free of any intrusion, not merely unwarranted intrusions." *Id.* The common hallways of Nguyen's apartment building were available for the use of tenants and their guests, the landlord and his agents, and others having legitimate reason to be on the premises. *See id.* Nguyen could not bar entry to the apartment building. Other tenants of the apartment building had the ability to let in visitors, delivery persons, or other members of the public. Nguyen could not have excluded individuals from the common hallway. That the law enforcement officers were technical trespassers in the common hallways is of no consequence because Nguyen had no reasonable expectation that the common hallways of the apartment building would be free from any intrusion. *See id.* In this case, we conclude the entry by the law enforcement officers into the common hallways was not a search.

 [¶ 11] No legitimate expectation of privacy is violated by governmental conduct that can reveal only information about contraband and nothing about arguably "private" facts. *United States v. Jacobsen,* 466 U.S. 109, 123–24, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (chemical testing of a substance that fell from a parcel in transit); *United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (canine inspection of luggage at airport). "[T]he manner in which information is obtained through ... [drug-sniffing dogs] is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item.... the information obtained is limited." *Jacobsen,* 466 U.S. at 124, 104 S.Ct. 1652 (quoting *Place,* 462 U.S. at 707, 103 S.Ct. 2637). Drug-sniffing dogs, unlike thermal-imaging devices, are not "capable of detecting lawful activity" such as the "intimate details" occurring in the home. *Illinois v. Caballes,* 543 U.S. 405, 409–10, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005) (canine inspection of an automobile during a lawful traffic stop) (citing and recognizing *Kyllo v. United States,* 533 U.S. 27, 38, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001)). There is no legitimate interest in privately possessing marijuana. Here, as in *Place* and *Jacobsen,* the likelihood that the use of a drug-sniffing dog in the common hallway of a secure apartment building will actually compromise any legitimate interest in privacy is too remote to

characterize the use of the drug-sniffing dog as a search subject to the Fourth Amendment.

[¶ 12] Nguyen argues that the use of a drug-sniffing dog was a search under *Jardines*. 133 S.Ct. 1409 (2013). In *Jardines*, the United States Supreme Court concluded officer use of a drug-sniffing dog on a homeowner's porch (curtilage) to investigate the contents of the home did constitute a "search" under the Fourth Amendment. *Id.* "When the Government obtains information by physically intruding on persons, houses, papers, or effects, a search within the original meaning of the Fourth Amendment has undoubtedly occurred." *Id.* at 1414 (quotation marks omitted) (quoting *United States v. Jones*, —— U.S. —— n. 3, 132 S.Ct. 945, 950–51 n. 3, 181 L.Ed.2d 911 n. 3 (2012)). The Court did not determine if the officer had violated Jardines' reasonable expectation of privacy because the traditional property approach had been met. *Id.* at 1417.

[¶ 13] "The Fourth Amendment protects the curtilage of a house. The extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." *United States v. Brooks*, 645 F.3d 971, 975 (8th Cir.2011) (quotations omitted) (citing *United States v. Dunn*, 480 U.S. 294, 300, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987)). The "central component of th[e] inquiry [i]s whether the area harbors ... intimate activity associated with the sanctity of a man's home and the privacies of life." *Dunn*, at 300, 107 S.Ct. 1134 (quotation marks omitted). The United States Supreme Court has articulated four factors that can be referenced to determine whether the area constitutes curtilage: "[T]he proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *Id.* at 301, 107 S.Ct. 1134. Although the *Dunn* factors also apply to determine extent-of-curtilage questions in urban areas, the concept is significantly modified when applied to a multifamily dwelling. *See Acosta*, 965 F.2d at 1256; *United States v. Romano*, 388 F.Supp. 101, 104 n. 5 (E.D.Pa.1975); *see also Cruz Pagan*, 537 F.2d at 558 (holding that the curtilage of an apartment house does not extend beyond the resident's own apartment and any separate areas subject to his exclusive control) (citing *Commonwealth v. Thomas*, 358 Mass. 771, 267 N.E.2d 489, 491 (1971)). Having determined that, unlike the area immediately surrounding a home, a party does not have a legitimate expectation of privacy in the common hallways and shared spaces of an apartment building, we conclude the common hallway is not an area within the curtilage of Nguyen's apartment. "It is well-settled that there exists no 'generalized expectation of privacy in the common areas of an apartment building.'" *Brooks*, 645 F.3d at 976 (quoting *McCaster*, 193 F.3d at 933). Under these particular circumstances, the drug dog sniff was not a search under the Fourth Amendment.

### III

[¶ 14] We conclude the law enforcement officers' investigation, with the use of a drug-sniffing dog in a secured common hallway, was not a violation of Nguyen's expectation of privacy. We also conclude there was no trespass onto curtilage that violated the Fourth Amendment. We reverse the order of the trial court and remand.

[¶ 15] GERALD W. VANDEWALLE, C.J., MARY MUEHLEN MARING,

DANIEL J. CROTHERS, DALE V. SANDSTROM, JJ, and BRUCE A. ROMANICK, D.J., concur.

[¶ 16] The Honorable BRUCE A. ROMANICK, D.J., sitting in place of KAPSNER, J., disqualified.