2015 ND 103

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Andrew Robert WILLIAMS, Defendant and Appellant.**

No. 20140370.

Supreme Court of North Dakota.

April 28, 2015.

Tracy J. Peters, Assistant State's Attorney, Fargo, ND, for plaintiff and appellee.

Scott P. Brand, Fargo, ND, for defendant and appellant.

Kapsner, Justice.

[¶ 1] Andrew Williams appeals from a criminal judgment entered after conditionally pleading guilty to possession of marijuana with intent to deliver and drug paraphernalia. We hold the law enforcement officer's use of a drug canine in a condominium building's hallway did not violate Williams' Fourth Amendment rights against unreasonable searches and seizures. We affirm.

I

[¶ 2] After receiving "intel" from the Fargo Police Department's Narcotics Unit that marijuana was being sold out of Williams' residence, law enforcement officers went to Williams' condominium building with Disco, a drug-sniffing dog. Upon entering an open gate of a fence surrounding the property, opening an unlocked, unsecured common door, and entering a common hallway of the four-plex condominium building, Disco sniffed the only two doors in the hallway, the door to Williams' privately owned condominium unit and the door to Williams' neighbor's unit. Disco alerted to Williams' condominium door, and Disco's handler also testified

he smelled burnt marijuana upon entering the hallway.

[¶ 3] The officers subsequently obtained a search warrant and searched the premises. On May 20, 2014, Williams was charged with possession of marijuana with intent to deliver within one thousand feet of a school, a class A felony, and possession of drug paraphernalia, a class A misdemeanor. Williams moved to suppress evidence, and the district court denied his motion at the August 25, 2014 hearing on the motion. The State amended count one to possession of marijuana with intent to deliver, a class B felony, and Williams conditionally pled guilty to both charges, reserving his right to appeal.

## II

[¶ 4] On appeal, Williams argues the district court erred in denying his motion to suppress evidence because the use of a drug-sniffing dog in a privately owned condominium hallway was a warrantless and illegal search, and any and all evidence obtained through that search is inadmissible.

[¶ 5] When reviewing a district court's decision on a motion to suppress evidence, this Court defers to the district court's factual findings and resolves conflicts in testimony in favor of affirmance. *State v. Doohen*, 2006 ND 239, ¶ 8, 724 N.W.2d 158. This Court will affirm a district court's decision on a motion to suppress if there is sufficient competent evidence capable of supporting the court's findings and if it is not contrary to the manifest weight of the evidence. *Id.* "Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law." *Id.* (citation omitted). This Court reviews constitutional rights violations under the de novo standard of review. *Beylund v. Levi*, 2015 ND 18, ¶ 8, 859 N.W.2d 403.

## III

[¶ 6] Williams argues a warrantless drug dog sniff within a privately owned condominium's curtilage constitutes an unreasonable search.

[¶ 7] The Fourth Amendment of the United States Constitution and Article 1, Section 8, of our state constitution prohibit unreasonable searches and seizures. *State v. Woinarowicz*, 2006 ND 179, ¶ 21, 720 N.W.2d 635. Warrantless searches and seizures are unreasonable under the Fourth Amendment, subject to a few well-delineated exceptions. *State v. DeCoteau*, 1999 ND 77, ¶ 7, 592 N.W.2d 579. "Evidence discovered during a warrantless search when no exception exists must be suppressed under the exclusionary rule." *State v. Kuruc*, 2014 ND 95, ¶ 12, 846 N.W.2d 314 (citation omitted).

## A

[¶ 8] Williams argues the district court erred in finding the hallway was not within his condominium unit's curtilage; he maintains the hallway is curtilage and should receive heightened constitutional protection.

[¶ 9] The Fourth Amendment protects a home's curtilage. *State v. Nguyen*, 2013 ND 252, ¶ 13, 841 N.W.2d 676. "Curtilage has been defined 'as that area near a dwelling, not necessarily enclosed, that generally includes buildings or other adjuncts used for domestic purposes.'" *State v. Mittleider*, 2011 ND 242, ¶ 15, 809 N.W.2d 303 (citation omitted). The extent of a home's curtilage is determined by factors bearing upon "whether an individual reasonably may expect that the area in question should be treated as the home itself." *Nguyen*, at ¶ 13. In *United States v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), the United States Supreme Court outlined factors to consid-

er when defining the extent of a home's curtilage, including the proximity of the home to the area claimed to be curtilage, whether the area is within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken to protect the area from observation by individuals passing by. The Court went on to state:

> We do not suggest that combining these factors produces a finely tuned formula that, when mechanically applied, yields a "correct" answer to all extent-of-curtilage questions. Rather, these factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration—whether the area in question is so intimately tied to the home itself that it should be placed under the home's "umbrella" of Fourth Amendment protection.

*Id.*

[¶ 10] Applying the *Dunn* factors, Williams argues the hallway is curtilage because it is not just "proximate" to his home, but it is actually a part of his home as it is built into and is part of the building's structure, and it is the only way to gain access to the inner part of his home. Williams also argues two enclosures surround the hallway, the outside fence and the common door to the hallway. In addition, he asserts he uses the hallway every day as a private entrance to his home, he maintains and cleans it, and his children play there. Finally, he argues the fence, which encloses the property and blocks public access to the property's yard, and the common door to the hallway demonstrate he has taken steps to protect the hallway from observation by individuals passing by.

[¶ 11] The State argues the concept of curtilage is "significantly modified when applied to a multi-family dwelling." *See Nguyen*, 2013 ND 252, ¶ 13, 841 N.W.2d

676 (common hallway is not within curtilage of individual's apartment); *see also United States v. Cruz Pagan*, 537 F.2d 554, 558 (1st Cir.1976) ("In a modern urban multi-family apartment house, the area within the 'curtilage' is necessarily much more limited than in the case of a rural dwelling subject to one owner's control.").

[¶ 12] While the *Dunn* factors may be helpful in defining whether an area is within a home's curtilage, the United States Supreme Court has recognized these factors are not a "finely tuned formula" that can be mechanically applied to yield a " 'correct' answer to all extent-of-curtilage questions." *Dunn*, 480 U.S. at 301, 107 S.Ct. 1134. Rather, they are simply helpful tools to help aid in determining if the area is so "intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id.* Often, the physical nature of multi-family dwellings raises the issue of whether individuals living in those types of dwellings have a reasonable expectation of privacy in common or shared areas. Because this case involves a multi-unit dwelling and a common area, an analysis of the *Dunn* factors, alone, is insufficient to determine whether the drug sniff was a search; a reasonable expectation of privacy analysis must also be conducted.

### B

[¶ 13] Williams argues the district court erred in finding there was no violation of his expectation of privacy.

[¶ 14] "Violations of the Fourth Amendment are not solely measured by property rights." *Nguyen*, 2013 ND 252, ¶ 8, 841 N.W.2d 676. "A search does not occur unless the government violates an individual's reasonable expectation of privacy." *Id.* (citation omitted). If a person has a reasonable expectation of pri-

vacy in an area, the government must first obtain a warrant prior to conducting a search, unless one of the exceptions to the warrant requirement applies. *Id.* Two elements comprise a person's reasonable expectation of privacy: "1) the individual must exhibit an actual, subjective expectation of privacy, and 2) that expectation must be one that society recognizes as reasonable." *State v. Gatlin,* 2014 ND 162, ¶ 5, 851 N.W.2d 178. In determining whether a legitimate expectation of privacy exists, a court looks to factors such as whether an individual has a possessory interest in the place searched, whether he can exclude others from that place, whether he takes precautions to maintain privacy, and whether he has a key to the premises. *Id.* The individual challenging a search has the burden of proving that a reasonable expectation of privacy existed. *Id.* Whether or not an individual has a reasonable expectation of privacy in an area is reviewed under the de novo standard of review. *Mittleider,* 2011 ND 242, ¶ 14, 809 N.W.2d 303.

[¶ 15] Williams argues he has a reasonable expectation of privacy in the hallway because he has a possessory interest, or "an undivided interest in the common elements as a tenant in common with all the other owners of the property," he has the ability to exclude others from the area, subject only to the permission from the other owners, and he took precautions to maintain privacy because there is a fence surrounding the property, the mailboxes are outside of the fence, and he put a plant in the hallway's window to limit visibility. Finally, he argues he has a key to the premises. It is unclear what key Williams is referring to as there was testimony that the common door to the hallway did not have a locking mechanism.

[¶ 16] The State argues the district court did not err in concluding Williams had no expectation of privacy in the hall-

way based on the *Nguyen* decision. *See Nguyen,* 2013 ND 252, ¶ 10, 841 N.W.2d 676 (no reasonable expectation of privacy in common hallway of secured apartment building).

[¶ 17] While it is undisputed Williams has a property interest in the hallway, his interest is not exclusive; he may not unilaterally exclude individuals from the area because his neighbor also has a property interest in the hallway. The very nature of a multi-family dwelling reduces one's expectation of privacy simply from the fact that one's neighbor also may use or occupy the common, or shared, areas. *See Nguyen,* 2013 ND 252, ¶ 10, 841 N.W.2d 676 (no reasonable expectation of privacy in common hallway of secured apartment building). We conclude an individual's expectation of privacy is diminished in the common areas of a multi-family dwelling.

IV

[¶ 18] Williams argues *Florida v. Jardines,* —— U.S. ——, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013), is controlling. In *Jardines,* after police officers received a tip that marijuana was being grown in Jardines' home, officers took a drug canine to Jardines' front porch to conduct a drug sniff. 133 S.Ct. at 1413. The dog alerted to the front door, and a search warrant was obtained. *Id.* Jardines was charged with trafficking cannabis; he moved to suppress evidence, arguing the drug sniff was an unreasonable search. *Id.* Noting a front porch is the classic example of curtilage and finding the area was constitutionally protected, the Court determined whether the officers made "an unlicensed physical intrusion," noting:

The officers were gathering information in an area belonging to Jardines and immediately surrounding his house—in the curtilage of the house, which we have held enjoys protection as part of

the home itself. And they gathered that information by physically entering and occupying the area to engage in conduct not explicitly or implicitly permitted by the homeowner.

*Id.* at 1414–15. Because the officers clearly occupied the constitutionally protected extension of Jardines' home, it was a search implicating the Fourth Amendment unless the officers had license to gather information there, and the United States Supreme Court found the officers did not, noting:

[A] person's Fourth Amendment rights do not rise or fall with the *Katz* formulation. The *Katz* reasonable expectations test has been added to, not substituted for, the traditional property-based understanding of the Fourth Amendment, and so is unnecessary to consider when the government gains evidence by physically intruding on constitutionally protected areas. Thus, we need not decide whether the officers' investigation of Jardines' home violated his expectation of privacy under *Katz*. One virtue of the Fourth Amendment's property-rights baseline is that it keeps easy cases easy. That the officers learned what they learned only by physically intruding on Jardines' property to gather evidence is enough to establish that a search occurred.

*Id.* at 1415, 1417 (internal citations and quotation marks omitted). Under *Jardines*, a Fourth Amendment violation occurs if the police enter a constitutionally protected area, over which the defendant enjoys property rights, for the purpose of conducting a search, and if this showing is made, the defendant need not additionally demonstrate a reasonable expectation of privacy in the area.

[¶ 19] The Eighth Circuit Court of Appeals has discussed *Jardines*, but it has not directly applied its principles as the searches at issue were conducted before

*Jardines* was decided in March 2013. *See United States v. Givens*, 763 F.3d 987, 992 (8th Cir.2014) (apartment door drug dog sniff); *United States v. Davis*, 760 F.3d 901, 905 (8th Cir.2014) (apartment door drug dog sniff). Other courts have reached different conclusions when interpreting and analyzing *Jardines*. *See State v. Dumstrey*, 359 Wis.2d 624, 859 N.W.2d 138, 146 (Ct.App.2014) (shared parking garage was not curtilage); *State v. Kono*, No. CR12026461, 2014 WL 7462049, *5 (Conn.Super.Ct. Nov. 18, 2014) (drug dog sniff of common hallway of condominium unit was a search); *United States v. Penaloza–Romero*, No. 13–36, 2013 WL 5472283, *7–9 (D.Minn. Sept. 30, 2013) (apartment common hallway was not curtilage).

[¶ 20] The State argues this Court's decision in *Nguyen* is controlling and should be upheld. In *Nguyen*, police officers entered a secured apartment building with a drug canine to investigate a reported smell of marijuana. 2013 ND 252, ¶¶ 2–3, 841 N.W.2d 676. After the dog alerted to Nguyen's apartment door, a search warrant was obtained, and Nguyen was charged with possession of marijuana with intent to deliver and drug paraphernalia. *Id.* at ¶¶ 3–5. Nguyen moved to suppress evidence, arguing the warrantless sweep of the building was an illegal search; the trial court granted his motion, and the State appealed. *Id.* at ¶ 5. Noting the Eighth Circuit Court of Appeals and other circuit court of appeals have consistently held tenants of multi-family dwellings do not have a legitimate expectation of privacy in common areas, this Court found the apartment building's common hallways were "available for the use of tenants and their guests, the landlord and his agents, and others having legitimate reason to be on the premises," and Nguyen could not exclude individuals from the area. *Id.* at ¶¶ 9–10. Concluding the building's com-

mon hallway was not curtilage, this Court held the drug sniff was not a search under the Fourth Amendment. *Id.* at ¶ 13.

[¶ 21]  Nguyen argued the use of a drug canine was a search under *Jardines*, but this Court distinguished *Jardines* because the United States Supreme Court did not determine whether Jardines' reasonable expectation of privacy was violated since the traditional property approach had been met. *Nguyen*, 2013 ND 252, ¶ 12, 841 N.W.2d 676; *see also Jardines*, 133 S.Ct. at 1417.  This Court noted the Fourth Amendment protects a home's curtilage, and the extent of curtilage is determined by factors bearing upon whether an individual reasonably may expect that the area in question should be treated as the home itself. *Nguyen*, at ¶ 13.  While those factors also "apply to determine extent-of-curtilage questions in urban areas," this Court found "the concept is significantly modified when applied to a multifamily dwelling." *Id.* "[U]nlike the area immediately surrounding a home, a party does not have a legitimate expectation of privacy in the common hallways and shared spaces of an apartment building." *Id.* Because Nguyen had no reasonable expectation the common hallways would be free from any intrusion, this Court held the entry by the law enforcement officers into the common hallways was not a search. *Id.* at ¶ 10. This Court also declined to reverse its holding in *Nguyen*. *See State v. Nguyen*, 2014 ND 211, ¶ 1, 858 N.W.2d 652.

[¶ 22]  Williams argues *Nguyen* "runs afoul [of] clearly articulated United States Supreme Court precedent," and should be overturned.  Even if this Court chooses not to overturn *Nguyen*, Williams contends the district court's order can be reversed while keeping *Nguyen* intact because his property interest in the common hallway is distinguishable from an apartment building's common hallway.

[¶ 23]  As in *Nguyen*, this case involves a multi-unit dwelling.  The district court found *Nguyen* to be controlling and noted the difference between common areas in multi-tenant dwellings and single-family dwellings:

> [T]he motion to suppress is going to be denied based on the *Nguyen* case. *Nguyen* makes it fairly clear that the common hallways between apartments are not curtilage of those apartments, and I know that ... these are condos. They're not apartments.  I understand that.... [T]he condominiums are ... more like apartments than they are like a single-family dwelling.... I saw the pictures of the condominiums in this case.  Looking at them from the outside, they could just as well be apartments....  So it's really a distinction without a meaningful distinction, the distinction between a condominium and an apartment, because the similarities are greater than any difference.  There may be an ownership interest, but that's not obvious from looking at it.  It's not treated the same way as a single-home dwelling.  The person who owns a home can decide to put up a fence and let everybody know that they're not invited, and nobody can overrule that.  In a situation like this where you have common ownership of common areas by the condominium owners, nobody can say, You cannot come in at that front gate unilaterally because another owner of a condominium could say, You're welcome in.  Come through the gate.  Come through the door.  I'm apartment No. 1. So it's more like an apartment than it is like a single-home dwelling.  So if there is a distinction, that favors the decision in this case to deny the motion to suppress.

[¶ 24]  Unlike the front porch in *Jardines*, we are not convinced a condominium building's common hallway is a "classic" example of an area adjacent to the

home and to which the activity of home life extends. An analysis of the *Dunn* factors regarding curtilage, alone, is insufficient to determine whether the drug sniff was a search; a reasonable expectation of privacy analysis must also be conducted. It is undisputed Williams has a property interest in the hallway, but his interest is not exclusive. Like in *Nguyen*, the common hallway of the condominium building was available for the use of the other co-owners and their guests and others having legitimate reasons to be on the premises, and Williams cannot unilaterally exclude individuals from the area because his co-owners also have a property interest in the shared space. *See Nguyen*, 2013 ND 252, ¶ 10, 841 N.W.2d 676. Like in *Nguyen*, we conclude the condominium building's common hallway was not curtilage, and Williams had no reasonable expectation that the shared space would be free from any intrusion.

[¶ 25] Other issues raised by Williams need not be addressed because they are not necessary for resolving this appeal. *Martin v. Berg*, 2005 ND 108, ¶ 15, 697 N.W.2d 723 ("We need not address questions, the answers to which are unnecessary for the determination of an appeal.").

V

[¶ 26] Because we conclude the common hallway was not an area within the curtilage of Williams' condominium and Williams did not have a reasonable expectation of privacy in the area, we hold the law enforcement officer's use of a drug canine in the building's common hallway did not violate Williams' Fourth Amendment rights against unreasonable searches and seizures, and the district court did not err in denying Williams' motion to suppress evidence. We affirm the criminal judgment.

[¶ 27] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.