# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 108

State of North Dakota,                                               Plaintiff and Appellee

v.

Joseph Franklin Valles,                                            Defendant and Appellant

No. 20180320

Appeal from the District Court of Ramsey County, Northeast Judicial District, the Honorable Lonnie Olson, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Tufte, Justice.

Kari M. Agotness, Ramsey County State's Attorney, Devils Lake, N.D., for plaintiff and appellee; submitted on brief.

Ulysses S. Jones, Devils Lake, N.D., for defendant and appellant.

**Tufte, Justice.**

[¶1]    Joseph Franklin Valles appeals from a criminal judgment and an order denying his motion to suppress. Valles conditionally pled guilty, preserving the right to appeal the order denying his motion to suppress. Valles argues his cell phone was searched without a warrant in violation of the Fourth Amendment. The State argues the cell phone was abandoned and therefore no warrant was required to search the phone. We reverse the suppression order and criminal judgment and remand to allow Valles to withdraw his conditional plea of guilty.

I

[¶2]    On the evening of April 5, 2018, a cell phone was found in a Devils Lake apartment parking lot. It was brought to the police station the next morning. Officer John Mickelson examined the phone, which was locked with a grid lock. He guessed the unlock pattern by trying patterns convenient to right-handed users and quickly unlocked the phone. Officer Mickelson then opened the photos application and looked at the stored photos, intending to identify the owner from "selfies" and other photos stored in the phone. He was able to identify both Valles and Jessica Bear from photos and a video. Officer Mickelson knew there was a restraining order against Valles from Bear. Officer Mickelson also saw in the photos what appeared to be drugs and drug paraphernalia.

[¶3]    Officer Mickelson showed the photos and video to another officer. He then gave the phone and a description of its contents to Officer Richard Juarez of the Lake Region Narcotics Task Force. Officer Juarez examined the phone's photos, video, Facebook Messenger application, text messages and call log. He found evidence of drug activity and applied for a search warrant for Valles' house, which he recognized from the photos. While executing the search warrant, officers found marijuana and marijuana paraphernalia.

II

[¶4]    We review a trial court's ruling on a motion to suppress as follows:

> The trial court's disposition of a motion to suppress will not be reversed if, after conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence. That standard of review recognizes the importance of the trial court's opportunity to observe the witnesses and assess their credibility, and we accord great deference to its decision in suppression matters.

*State v. Montgomery*, 2018 ND 20, ¶ 4, 905 N.W.2d 754 (quotation marks omitted). "Whether findings of fact meet a legal standard is a question of law. While we do not conduct a de novo review of the findings of fact, questions of law are fully reviewable." *Id.* Further, "[t]his Court reviews constitutional rights violations under the de novo standard of review." *State v. Williams*, 2015 ND 103, ¶ 5, 862 N.W.2d 831. "Whether law enforcement violated constitutional prohibitions against unreasonable search and seizure is a question of law." *State v. Lark*, 2017 ND 251, ¶ 12, 902 N.W.2d 739.

[¶5]    The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Fourth Amendment, as applied to the states through the Fourteenth Amendment, "prohibits unreasonable searches and seizures." *City of Devils Lake v. Grove*, 2008 ND 155, ¶ 8, 755 N.W.2d 485 (citing *Dunaway v. New York*, 442 U.S. 200, 207 (1979)). "Warrantless searches and seizures are unreasonable . . . , subject to a few well-delineated exceptions." *Williams*, 2015 ND 103, ¶ 7, 862 N.W.2d 831; *Riley v. California*, 573 U.S. 373, 382 (2014). "Evidence discovered during a warrantless search when no exception exists must be suppressed under the exclusionary rule." *Williams*, at ¶ 7; *State v. Biwer*, 2018 ND 185, ¶ 13, 915 N.W.2d 837. The burden falls initially on the defendant to support his motion to

2

suppress with specific factual allegations supporting a finding of an illegal search or seizure. *State v. Zacher*, 2015 ND 208, ¶ 7, 868 N.W.2d 847 (citing *State v. Glaesman*, 545 N.W.2d 178, 182 n.1 (N.D. 1996)). The State then bears the burden to justify a warrantless search or seizure. *State v. Pogue*, 2015 ND 211, ¶ 10, 868 N.W.2d 522.

[¶6]    Valles argued in his motion to suppress that his cell phone had been searched by Devils Lake police officers without a warrant. The State then carried the ultimate burden to justify the warrantless search by demonstrating Valles abandoned his cell phone or the phone was otherwise outside the protection of the Fourth Amendment. The State points to Valles' failure to present evidence showing he preserved his possessory right in either the phone itself or its contents. However, the State may not satisfy its affirmative burden by relying on a lack of evidence presented by Valles. *See Nickel*, 2013 ND 155, ¶ 22, 836 N.W.2d 405; *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001). The State relies on evidence that Valles' phone was found one-half mile away from his home and that Valles did not report the phone missing or stolen. This is the only evidence identified by the State which was known to the officer at the time of the first search. *See United States v. Crumble*, 878 F.3d 656, 659 (8th Cir. 2018), and *United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir. 1997) (analyzing abandonment under the facts known to the officers at the time of the search).

[¶7]    A warrantless search of abandoned property does not violate the Fourth Amendment. *Crumble*, 878 F.3d at 659; *Tugwell*, 125 F.3d at 602; *State v. Adams*, 2018 ND 18, ¶ 10, 905 N.W.2d 758; *State v. Dunn*, 2002 ND 189, ¶ 8, 653 N.W.2d 688; *State v. Huether*, 453 N.W.2d 778, 780 (N.D. 1990). By abandoning property, the owner forfeits his possessory interest and the right to object to a search or seizure. *Abel v. United States*, 362 U.S. 217, 241 (1960) ("So far as the record shows, petitioner had abandoned these articles. He had thrown them away. So far as he was concerned, they were *bona vacantia* [ownerless property].") (citing *Hester v. United States*, 265 U.S. 57, 58 (1924)); *Adams*, at ¶ 10. Abandonment is not viewed strictly

3

as a matter of property rights, but it depends on whether the defendant has relinquished his right to protection from unreasonable searches and seizures by denying ownership or giving up physical possession of the property subject to search. *Tugwell*, 125 F.3d at 602. It is a question of "whether the owner has 'voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question.'" *Adams*, at ¶ 10 (quoting 6 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.3(f), at 286-88 (5th ed. 2012 & Supp. 2018)). Abandonment "is primarily a question of intent which may be inferred from words, acts and other objective facts." *Dunn*, at ¶ 8. We have stated that if the defendant "intends to retain his . . . interest in that property, there has been no abandonment." *Huether*, 453 N.W.2d at 781. However, this intent is determined solely from the objective facts known to the officers at the time of the search. *Adams*, at ¶ 10; *Crumble*, 878 F.3d at 659; *Tugwell*, 125 F.3d at 602. The abandonment analysis "depends on the totality of the circumstances, with 'two important factors being denial of ownership and physical relinquishment of the property.'" *Crumble*, at 659; *see also Adams*, at ¶ 10.

[¶8]    Most courts that have faced the issue have allowed warrantless searches of abandoned phones. The typical scenario is where a phone is left at a crime scene under circumstances inconsistent with a lost or misplaced phone that may yet be retrieved by its owner. *State v. Brown*, 776 S.E.2d 917, 924 (S.C. Ct. App. 2015) (reasoning that initial privacy interest in a locked container may be abandoned if the container is left at a crime scene, indicating "a superior desire to avoid being arrested for a crime"); *State v. Samalia*, 375 P.3d 1082, 1084 (Wash. 2016) (en banc) (phone found in abandoned stolen vehicle); *Martinez v. State*, No. 08-14-00130-CR, 2016 WL 4447660, at *1-4 (Tex. App. Aug. 24, 2016) (phone left at murder scene); *Edwards v. State*, 497 S.W.3d 147, 154, 161 (Tex. App. 2016) (phone left on stolen vehicle at scene of armed robbery); *State v. Brown*, 776 S.E.2d 917, 923-24 (S.C. Ct. App. 2015) (phone left at scene of burglary); *State v. Dailey*, 2010-Ohio-4816, at ¶¶ 3, 13, 16 (phone left in pocket of jacket that was abandoned while fleeing from store

4

employees attempting to apprehend defendant for theft); *People v. Daggs*, 34 Cal. Rptr. 3d 649, 650-51 (Ct. App. 2005) (phone dropped during robbery of drug store). If truly abandoned, a phone is ownerless and thus the former owner lacks a continuing possessory interest to assert a Fourth Amendment claim. But a phone that is lost, dropped, or misplaced is not ownerless, and the owner retains the protection of the Fourth Amendment.

[¶9]    The objective facts known to the officer at the time of the search were as follows. The phone was found lying in a parking lot in front of apartments. The woman who found it gave it to the police twelve hours after it was found. The twelve-hour period was overnight (approximately 9:00 p.m. to 9:00 a.m.), and there was no report that the phone was lost or stolen during the approximately twelve hours after it was found up until the first search. There is no evidence indicating how long Valles' phone was in the parking lot before it was found. The record does not indicate that the parking lot was a crime scene. The record shows no denial of ownership by Valles, nor was there other evidence of actions showing Valles had intentionally discarded the cell phone. Further, the screen was locked, which indicates Valles' intent to maintain privacy and preserve protection from uninvited examination by others.

[¶10]   The district court inferred Valles decided not to recover his phone solely from the absence of evidence presented by Valles that he attempted to recover the phone:

> Valles did not report a lost or stolen cell phone. He presented no evidence that he did anything during this time to try to recover his phone or to otherwise retain the privacy he previously had in the phone's contents. Valles' decision not to attempt to recover the phone equates to the abandonment of the phone. Further. it would be an unreasonable expectation to assume law enforcement will seek a search warrant for all lost cell phones turned in to them, or to assume law enforcement will not attempt to access the contents of a lost phone to determine ownership.

But it was not Valles' burden to prove he maintained a possessory interest in his cell phone. It was the State's burden to justify the warrantless search by showing Valles abandoned his possessory interest in his cell phone prior to the search. One day

5

passing without the owner having reported a phone missing is insufficient to establish abandonment. We cannot say on this record whether it is common for a person who has lost a cell phone to report the loss to the police. Officer Mickelson did testify in regard to receiving the phone when it was turned in at the police station: "That happens *every once in a while* when they find things. They bring it to us because they don't know who it goes to and they don't want to be thought of as stealing it or something like that." (Emphasis added.) The more often lost phones are given to the police, the more Valles' failure to report the loss of his phone to the police would weigh in favor of abandonment. However, phones being turned in "every once in awhile" all but eliminates the value of Valles' failure to report as support for a finding of abandonment. Also, the record discloses no instance in which the term "abandoned" was used by any of the officers, who uniformly referred to the phone as "lost." The first time the phone was referred to as abandoned was in the State's argument to the district court. The initial actions of Officer Mickelson indicate an intent to identify the phone's owner and return it. By his actions and later testimony, Officer Mickelson showed he believed the phone still had a rightful owner and was thus lost, not abandoned.

[¶11]   Valles argues the facts show he maintained a possessory interest in the phone, although it was misplaced or "lost." "The term 'lost' is concerned with the involuntary change of location or inability to find." *State v. Brewster*, 72 N.D. 409, 411, 7 N.W.2d 742, 744 (1943); *see also Corliss v. Wenner*, 34 P.3d 1100, 1104 (Idaho Ct. App. 2001) (defining "lost property" as "property which the owner has involuntarily and unintentionally parted with through neglect, carelessness, or inadvertence and does not know the whereabouts").

> With the majority of device owners almost always having their phones on them, the likelihood that an unaccompanied phone was unintentionally left behind is quite high. Admittedly, when a police officer finds a cell phone unattended, it may be impossible to determine from the circumstances if its owner intended to lose the device or if it was accidentally dropped. In this situation, presuming an owner unintentionally left the device behind better protects the personal data

6

on a cell phone, especially in light of the unlikelihood that its owner intended to allow a stranger to dig through its entire contents.

Abigail Hoverman, Note, *Riley and Abandonment: Expanding Fourth Amendment Protection of Cell Phones*, 111 Nw. U. L. Rev. 517, 546 (2017). Unlike abandoned property, lost property still has an owner and is not outside the protection of the Fourth Amendment.

[¶12] "The touchstone" of search and seizure law is "reasonableness, which is assessed by balancing the degree to which a search intrudes on an individual's privacy with the degree to which a search is needed for the promotion of legitimate governmental interests." *State v. Adams*, 2010 ND 184, ¶ 15, 788 N.W.2d 619; *see also Riley*, 573 U.S. at 381. A person's interest in the contents of a personal cell phone is strong because cell phones hold the "privacies of life." *Riley*, at 403. The Supreme Court in *Riley* discusses at length the great quantity and personal nature of data contained on a cell phone, making cell phones a uniquely sensitive item in analyzing search and seizure limitations. *Id.* at 382-98. "Prior to the digital age, people did not typically carry a cache of sensitive personal information with them as they went about their day. Now it is the person who is not carrying a cell phone, with all that it contains, who is the exception . . . ." *Id.* at 395. Such "privacy is no less worthy of protection when a cell phone is outside of a person's immediate control." *State v. Peoples*, 378 P.3d 421, 425 (Ariz. 2016). Thus an individual's privacy interest in a cell phone remains high even when it is lost.

[¶13] On the other hand, there is a legitimate government interest, as well as a personal interest, in police officers returning lost cell phones to their rightful owners. Yet because of the great amount of personal and private information located on a cell phone, with the additional access to even more information through means of the Internet and applications that act as portals to vast amounts of web information and cloud storage, the balance shifts heavily toward protecting the individual's privacy rights over the benefit of returning a lost item.

[¶14] All of the above privacy concerns are heightened, and the government's legitimate interest is lowered, when the phone is locked. "[W]hen the police come into lawful possession of a closed container, for example, one which was turned over to them . . . further intrusion into the privacy of the container ordinarily requires a warrant." 2 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment*, § 4.1(b) (5th ed. 2012 & Supp. 2018). Any search of a cell phone that requires bypassing a lock, password, or other security feature of a cell phone must be performed pursuant to a warrant. A security lock on a cell phone signals that the information within is not intended for public viewing. Hoverman, *supra*, at 544. It is analogous to a lock on a car trunk, *U.S. v. Wilson*, 636 F.2d 1161, 1163-65 (8th Cir. 1980), a residence, *United States v. Bain*, 874 F.3d 1, 15 (1st Cir. 2017), a briefcase, *United States v. Basinki*, 226 F.3d 829, 836 (7th Cir. 2000), a diary, *Sims v. State*, 311 S.E.2d 161, 167 (Ga. 1984), a locker, *Dawson v. State*, 868 S.W.2d 363, 370 (Tex. App. 1993), a sealed package, *State v. Matthews*, 216 N.W.2d 90, 103 (N.D. 1974), or a "no trespassing" sign on a residence, *State v. Kochel*, 2008 ND 28, ¶ 9, 744 N.W.2d 771. All of these variations convey that the contents restricted from access by a lock or seal are not intended for examination by the general public. We do not consider here whether or to what extent failure to lock a cell phone opens up the cell phone's "intrinsically private" contents to "an invitation for others to snoop." *State v. Peoples*, 378 P.3d 421, 426 (Ariz. 2016).

[¶15] An officer or other person who finds a cell phone has numerous options to identify the owner short of bypassing a security lock and examining the photos and other private contents of the phone. These options include examining the exterior of the phone, accessing any "in case of emergency" information configured in the phone, viewing any pop-up messages that may appear on the lock screen, using the emergency dialer to dial 9-1-1 so the dispatcher can identify the cell phone's assigned number, or taking the phone to the wireless service provider to identify the phone's owner. *See* Mikah Sargent, *How to Find the Owner of a Lost or Stolen iPhone*, iMore (Dec. 28, 2016), https://www.imore.com/how-find-owner-lost-or-stolen-iphone. The

availability of several less intrusive options greatly reduces the district court's concern that it is an "unreasonable expectation" for the police to seek a warrant every time a lost cell phone is turned in to them. To the extent any of these options may be a search of the phone in that they seek information through some minimal trespass to the phone, *United States v. Jones*, 565 U.S. 400, 404 (2012), they are less likely to be constitutionally unreasonable in most circumstances because they are actions one might expect from any person who finds a phone. In contrast, the clear message of a lock is that the owner does not intend someone who picks up the phone to examine the contents for any purpose.

[¶16]   Considered as a whole, the objective facts known to the officer at the time of the initial search do not satisfy the State's burden to show Valles intentionally abandoned his phone. The warrantless search does not fall into an exception to the warrant requirement and was constitutionally unreasonable. The evidence obtained as fruits of the search should have been suppressed under the exclusionary rule.

III

[¶17]   In finding the cell phone to be abandoned, the district court misapplied the law by shifting onto Valles the State's burden to justify a warrantless search. We reverse the district court's judgment and remand with instructions to exclude all the evidence which resulted from the warrants because the warrants were granted on the basis of information obtained from the warrantless searches of the cell phone. We further instruct the court to allow Valles to withdraw his guilty plea.

[¶18]   Jerod E. Tufte
          Daniel J. Crothers
          Lisa Fair McEvers
          Jon J. Jensen
          Gerald W. VandeWalle, C.J.