

# IN THE SUPREME COURT OF GUAM

## PEOPLE OF GUAM,
Plaintiff-Appellant,

**v.**

## CARLOS ROBERT COMPTON CAMACHO,
Defendant-Appellee.

Supreme Court Case No.: CRA22-007
Superior Court Case No.: CF0399-21

## OPINION

## Cite as: 2023 Guam 9

Appeal from the Superior Court of Guam
Argued and submitted on March 3, 2023
Hagåtña, Guam

Appearing for Plaintiff-Appellant:
Marianne Woloschuk, *Esq.*
Assistant Attorney General
Prosecution Division
Office of the Attorney General
590 S. Marine Corps Dr., Ste. 801
Tamuning, GU 96913

Appearing for Defendant-Appellee:
F. Randall Cunliffe, *Esq.*
Cunliffe & Cook
A Professional Corporation
210 Archbishop Flores St., Ste. 200
Hagåtña, GU 96910

E-Received
9/22/2023 10:34:09 AM

BEFORE: F. PHILIP CARBULLIDO, Presiding Justice; KATHERINE A. MARAMAN, Associate Justice; JOHN A. MANGLONA, Justice *Pro Tempore*.

**CARBULLIDO, P.J.:**

[1]     Defendant-Appellee Carlos Robert Compton Camacho was pulled over in Tumon for driving a truck with an expired registration decal.  The officer who conducted the traffic stop asked for consent to search the vehicle, which Camacho refused.  After the officer informed Camacho that he was under arrest and instructed the occupants to exit the vehicle, the officer observed a box of ammunition on the vehicle floor.  A search was conducted and contraband was ultimately seized.  Camacho was charged with Possession of a Firearm Without Valid Identification (as a Third-Degree Felony), Possession of a Concealed Firearm (as a Third-Degree Felony), and Possession of an Unregistered Firearm (as a Third-Degree Felony).  Camacho moved to suppress the evidence seized, arguing his Fourth Amendment rights were violated.

[2]     Following a suppression hearing, the trial court determined Plaintiff-Appellant People of Guam ("People") had not presented sufficient evidence to show that Camacho voluntarily consented to a search of his vehicle and granted Camacho's motion to suppress.  The People appeal the trial court's ruling, arguing there was no proper basis to suppress the evidence.  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

[3]     In August 2021, Guam Police Department ("GPD") Officer Christopher Champion was on patrol in Tumon when he noticed a Toyota Tacoma driving from Rivera Lane to Route 14 aka San Vitores Road with a registration decal that expired in 2019.  Officer Champion activated his emergency lights to pull over the vehicle.  The vehicle eventually pulled into a parking lot.

[4]     There were three occupants in the vehicle: the driver, later identified as Camacho, a female individual in the front passenger seat, and a male individual in the rear passenger seat.  Officer

Champion asked Camacho for his driver's license and registration, but Camacho could not produce either. As Camacho was fumbling through documents, he seemed nervous to Officer Champion. Officer Champion also testified he smelled unburnt marijuana emanating from the car. Officer Champion asked Camacho if he could search the vehicle, but Camacho refused.

[5]     Officer Champion testified Camacho admitted to smoking marijuana at Capital Bay Hotel before driving. Officer Champion informed Camacho he was under arrest and asked all three occupants to exit the vehicle. Officer Champion arrested Camacho for not having a driver's license. When the female passenger exited the vehicle, Officer Champion noticed a box of nine-millimeter ammunition on the vehicle floor. Officer Champion testified that he was around three to four feet from the vehicle when he noticed the ammunition.

[6]     Officer Champion told the other officers at the scene of the presence of ammunition and informed them that, based on his experience, there was a possible presence of a gun.[1] Officer Champion advised Camacho of his *Miranda* rights and informed Camacho that he found ammunition in the vehicle. Officer Champion testified Camacho did not initially respond to him. Rather, Camacho was shaking his head and saying something like, "I'm screwed," or "I'm in trouble." Transcript ("Tr.") at 12 (Mot. Suppress Hr'g, Jan. 19, 2022). Officer Champion testified that when Camacho said, "I'm screwed," he interpreted Camacho's statement as admitting there was a gun in the car. *Id.* at 13.

[7]     Officer Champion testified that, while still at the scene and in custody, Camacho eventually gave consent to search his vehicle.[2] Officer Champion also testified that Camacho admitted there

---

[1] Officer Champion testified that an Officer Dodd and an Officer Rodriguez were at the scene, but he did not testify as to the specific officers he informed, nor did he mention whether any additional officers were present.

[2] It is unclear from the record where Camacho was located when he allegedly gave consent to search, as Officer Champion testified to possibly having placed Camacho in the back of his squad car upon his arrest. Additionally, Officer Champion's testimony does not provide clear details regarding the conversation between himself and Camacho, during which he claimed Camacho gave consent to the search.

was a gun in a gray backpack. Officer Champion could not recall whether he asked Camacho if he had a firearms identification card, but he testified that he checked Camacho's name through the GPD system, which would also have information from the firearms identification database. Officer Champion found the gun in the gray backpack, as Camacho described. Camacho was eventually transported to the Tumon precinct where he refused to waive his *Miranda* rights.

[8]     Camacho was charged with Possession of a Firearm Without Valid Identification (as a Third-Degree Felony), Possession of a Concealed Firearm (as a Third-Degree Felony), and Possession of an Unregistered Firearm (as a Third-Degree Felony). Camacho timely moved to suppress on the ground that the evidence was obtained as a result of an unlawful arrest. In opposition, the People argued Camacho validly consented to the search.

[9]     At the suppression hearing, the People called Officer Champion as their sole fact witness. Following the examination of Officer Champion and arguments by counsels for Camacho and the People, the court provided an additional opportunity for both parties to submit further briefing after the suppression hearing. The People maintained that no evidence should be suppressed because the ammunition was in plain view and because the initial traffic stop was lawful.

[10]     The trial court issued a Decision and Order granting Camacho's motion to suppress. The court reasoned that, because the traffic violations for which Camacho was arrested were not arrestable offenses, the initial arrest was unlawful. However, although the court found that it was improper to arrest Camacho for a traffic violation, the basis for the decision to suppress the evidence was the lack of voluntary consent. The court was "unable to ascertain whether [Camacho] actually gave informed and voluntary consent to a search of his vehicle." Record on Appeal ("RA"), tab 31 at 7-8 (Dec. & Order, May 24, 2022).

**[11]**    First, the trial court acknowledged that warrantless searches or seizures are permissible only if an exception, such as voluntary consent, applies. The court stated that it "must examine, based on the totality of the circumstances, whether [Camacho]'s consent was voluntary." *Id.* at 7. The trial court listed factors this court has used to assess voluntariness and noted the People's burden to prove voluntariness by a preponderance of the evidence. Applying these factors to the facts, the trial court determined it could not clearly find that Camacho voluntarily consented. The court ordered that the evidence be suppressed, and the People timely appealed.

## II.  JURISDICTION

**[12]**    This court has jurisdiction over an appeal from a Superior Court order granting a motion to suppress evidence. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 118-13 (2023)); 7 GCA §§ 3107, 3108(b) (2005); 8 GCA §§ 130.20(a)(6), 130.40 (2005).

## III.  STANDARD OF REVIEW

**[13]**    "We review a trial court's decision on a motion to suppress *de novo*." *People v. Quintanilla*, 2020 Guam 8 ¶ 9 (quoting *People v. Gallo*, 2017 Guam 24 ¶ 16). The trial court's factual findings are reviewed for clear error. *Id.* (citing *People v. Mansapit*, 2016 Guam 30 ¶ 8). When the People appeal a decision granting a motion to suppress, the facts are construed in the light most favorable to the defendant. *People v. Camacho*, 2004 Guam 6 ¶ 13. "A finding is clearly erroneous when, even though some evidence supports it, the entire record produces the definite and firm conviction that the court below committed a mistake." *Mansapit*, 2016 Guam 30 ¶ 8 (quoting *Camacho*, 2004 Guam 6 ¶ 13). We will accept the trial court's findings of fact unless the entire record makes clear that a mistake was made. *Id.* "[T]he trial court's application of the facts to the law is reviewed *de novo*." *People v. Santos*, 1999 Guam 1 ¶ 31 (citing *People v. Johnson*, 1997 Guam 9 ¶ 3; *United States v. Garcia*, 890 F.2d 355, 358 (11th Cir. 1989)); *see also*

*Gallo*, 2017 Guam 24 ¶ 16 ("[W]e review the trial court's legal analysis under a *de novo* standard of review." (citing *People v. Chargualaf*, 2001 Guam 1 ¶ 12)).

## IV.  ANALYSIS

**[14]**   The Fourth Amendment protects against unreasonable searches and seizures.  U.S. Const. amend. IV.  The protections provided by the Fourth Amendment have been extended to the people of Guam through §§ 1421b(c) and 1421b(u) of the Organic Act of Guam.  *Camacho*, 2004 Guam 6 ¶ 15; *Johnson*, 1997 Guam 9 ¶ 4.  To pass muster under the Fourth Amendment, searches and seizures must be reasonable under the circumstances.  *Whren v. United States*, 517 U.S. 806, 810 (1996).  "The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'"  *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (per curiam) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)).

**[15]**   Warrantless searches and seizures are per se unreasonable, subject to a few specifically established and well-delineated exceptions.  *People v. Cundiff*, 2006 Guam 12 ¶ 26 (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)).  This court has recognized voluntary consent as an exception to the warrant requirement.  *Chargualaf*, 2001 Guam 1 ¶ 14 (citing *Santos*, 1999 Guam 1 ¶ 33).  Where the consent occurs during a lawful encounter or detention, the validity of the exception turns on whether the consent was voluntarily given.  *Id.* ¶ 15.  However, if the consent was given during an unlawful encounter, the consent is invalid and the exception does not apply "absent a demonstration by the government both of a sufficient break in the causal chain between the illegality and the seizure of evidence, thus ensuring that the search is not an exploitation of the prior illegality, and of voluntariness."  *Id.* (quoting *Commonwealth v. Strickler*, 757 A.2d 884, 889 (Pa. 2000)); *see also United States v. Shrum*, 908 F.3d 1219, 1233-34 (10th Cir. 2018) ("[E]vidence

obtained by the purported consent should be held admissible only if it is determined that the consent was *both* voluntary and not an exploitation of prior illegality." (citing 4 Wayne R. LaFave, *Search and Seizure* § 8.2(d) at 101 (5th ed. 2012))).

[16]    The People maintain the trial court erred in granting Camacho's motion to suppress because an exception to the warrant requirement applied. Appellant's Br. at 15 (Sept. 30, 2022).[3] Although the parties disagree about the lawfulness of Camacho's encounter with the police, this case can be resolved on voluntariness grounds because the People must show the consent was voluntary even if the encounter was lawful. *See Chargualaf*, 2001 Guam 1 ¶ 15; *see also State v. Hogan*, 868 N.W.2d 124, 191 (Wis. 2015) ("Involuntary consent is invalid, regardless of any prior illegality or attenuation therefrom."); 4 Wayne R. LaFave, *Search & Seizure* § 8.2(d) (6th ed. 2022) ("It is to be doubted that it is possible for a consent to search to be 'purged of the primary taint' under *Wong Sun* if, taking into account the prior illegality and other relevant circumstances, the consent was not voluntary.").[4]

[17]    We now consider whether Camacho voluntarily consented to the search of his vehicle and the extent to which a trial court's voluntary-consent analysis is limited to specific acts or to a specific time period.

## A.  Camacho's Consent Was Involuntary Under the Totality of the Circumstances

[18]    Through voluntary consent, "[p]olice may search an area, without probable cause, over which the person possesses adequate authority." *Santos*, 1999 Guam 1 ¶ 33 (citing *United States*

---

[3] In their opening brief, the People argued that in addition to consent, additional exceptions to the Fourth Amendment warrant requirement applied. However, the People conceded at oral arguments that the additional exceptions were not presented to the lower court and therefore agreed that these issues were waived for appellate review. Oral Arg. at 10:22:27-10:22:38 (Mar. 3, 2023).

[4] Accordingly, we decline to review any possible attenuation between Camacho's arrest and the evidence seized. We also decline to take judicial notice of guidance issued by the Guam Department of Revenue and Taxation relative to expired motor vehicle registrations during the COVID-19 pandemic, which was filed in response to Camacho's argument regarding the invalidity of the traffic stop. *See* Appellant's Mot. Jud. Notice, Ex. 12 at 5 (Mar. 2, 2023).

*v. Matlock*, 415 U.S. 164, 171 (1974)). The prosecution bears the burden of demonstrating the voluntary nature of the consent by a preponderance of the evidence. *Id.* (citing *Matlock*, 415 U.S. at 177).

[19] Voluntariness is determined based on all relevant circumstances in a particular case. *Id.* ¶ 34 (citing *United States v. Rothman*, 492 F.2d 1260, 1264 (9th Cir. 1973)). When evaluating the totality of the circumstances, courts are required to "balanc[e] relevant factors surrounding consent and the credibility of those witnesses presenting evidence." *Id.* ¶ 42. A trial court must "carefully sift through the unique facts and circumstances of each case," balancing the government's interest in conducting lawful searches and the defendant's right to be free from coercive conduct. *Id.* ¶ 34.

[20] This court has considered factors listed by different federal circuits as "helpful" in analyzing voluntariness. *See generally id.* ¶¶ 34-37. In *People v. Santos*, we used the Ninth Circuit's five-factor test as illustrative of "potential considerations to be used to ascertain the facts and circumstances that determine the voluntariness of consent given in a particular case." *Id.* ¶¶ 35, 37. The Ninth Circuit considers:

1) Whether the defendant was in custody;
2) Whether the arresting officers have their weapons drawn;
3) Whether Miranda warnings have been given;
4) Whether the defendant was told he has a right not to consent; and
5) Whether the defendant was told a search warrant could be obtained.

*Id.* ¶ 35 (citing *United States v. Castillo*, 866 F.2d 1071, 1072 (9th Cir. 1988)). When analyzing voluntariness, the Ninth Circuit has held:

> No one factor is determinative in the equation. It is not necessary to check off all five factors, but "many of this court's decisions upholding consent as voluntary are supported by at least several of the factors." Nevertheless, these factors are only guideposts, not a mechanized formula to resolve the voluntariness inquiry.

*United States v. Patayan Soriano*, 361 F.3d 494, 502 (9th Cir. 2004) (internal citations omitted).

*Santos* also referenced the Eighth Circuit's six-factor test as helpful:

1) Whether the consenting person was detained and the length of time of the questioning;
2) Whether the consenting person was threatened, physically intimidated, or punished by the police;
3) Whether the person relied upon promises or misrepresentations made by the police;
4) Whether the person was in custody or under arrest when the consent was given;
5) Whether the person was in a public or a secluded place; or
6) Whether the person objected to the search or stood by silently while the search occurred.

*Santos*, 1999 Guam 1 ¶ 36 (citing *United States v. Chaidez*, 906 F.2d 377, 381 (8th Cir. 1990)).

[21]     We have held that these factors are neither exhaustive nor dispositive. *Id.* ¶ 37. Rather, the factors from the Eighth and Ninth Circuits are "potential considerations" that "should not be applied mechanically, because '[t]he concept of reasonable suspicion, like probable cause, is not readily, or even usefully, reduced to a neat set of legal rules.'" *Id.* (alteration in original) (quoting *Chaidez*, 906 F.2d at 381).

[22]     Consistent with our guidance in *Santos*, we consider these factors to be helpful in ascertaining the facts and circumstances that determine the voluntariness of Camacho's consent. First, there is evidence that Camacho may have been detained when he provided consent, although it is unclear for how long. *See Chaidez*, 906 F.2d at 381; Tr. at 10-12 (Mot. Suppress Hr'g). The People state, "Officer Champion did not draw out this first phase of the traffic stop beyond the fifteen minutes allowed by the Stop and Frisk Act." Appellant's Br. at 15. However, the record does not clearly demonstrate the length of detention, nor is the record clear on how long after the "first phase" Camacho was detained before giving consent. Officer Champion stated that he arrested Camacho for the traffic violation of driving without a license, which undercuts the conclusion that the detention was brief.

[23]     Furthermore, Camacho was unlawfully under arrest when he eventually provided consent. *See Chaidez*, 906 F.2d at 381-82; *Castillo*, 866 F.2d at 1082; *see also* Tr. at 12, 19 (Mot. Suppress

Hr'g). Next, there is some ambiguity as to whether Camacho relied on misrepresentations concerning consent to search. *See Chaidez*, 906 F.2d at 381-82. The People presented no evidence that Camacho was told he had a right not to consent or that a search warrant could be obtained. *See Castillo*, 866 F.2d at 1082. Moreover, Officer Champion informed Camacho of his *Miranda* rights before informing Camacho he found ammunition in his car—possession of which is not a crime. *See id.* Finally, Camacho objected to the search of his car when Officer Champion first inquired. *See Chaidez*, 906 F.2d at 381, 383. In considering the totality of the circumstances, we find that the People have failed to carry their burden to demonstrate by a preponderance of the evidence that Camacho's consent was voluntary.

## B. Courts Are Not Limited to Specific Acts or a Specific Time Period in a Totality of the Circumstances Analysis of Voluntary Consent

[24] The People argue the trial court's analysis of Camacho's consent was impermissible because it included certain facts that were "separate" from the relevant issue, specifically Camacho's initial refusal to consent to the search and his later refusal to waive his *Miranda* rights at the police station. Appellant's Br. at 21. The People state that "[t]hese are separate instances that have no bearing on the validity and voluntariness of the consent Camacho gave after Officer Champion saw the ammunition."[5] *Id.* We do not agree.

[25] In its May 24, 2022 Decision and Order, the trial court found: (1) Officer Champion stopped Camacho for driving a vehicle with an expired registration decal; (2) Officer Champion asked Camacho if he could search his vehicle, to which Camacho refused; (3) Officer Champion arrested Camacho for not having a driver's license; (4) Officer Champion noticed a box of

---

[5] The People do not provide any citations to support this contention. Instead, the People provide conclusory statements and versions of the facts unsupported by the record. *See* Appellant's Br. at 21. For example, the People state that Camacho refused to waive his *Miranda* rights at the police station because "he knew that the 'damage' had already been done and that further disclosures would not help him." *Id.* The record does not dictate such a conclusion.

ammunition on the vehicle floor after the female passenger exited the vehicle; (5) Officer Champion advised Camacho of his *Miranda* rights and informed him that the officers found ammunition in his car; (6) Camacho did not directly respond to Officer Champion, but may have instead said "I'm screwed" or "I'm in trouble"; (7) Camacho eventually gave consent and also described a gun being in a gray backpack; (8) Officer Champion could not recall whether he asked Camacho if he had a firearms identification card but testified to running Camacho's name through the GPD system, which would have that information; and (9) Camacho was transported to the Tumon precinct where he refused to waive his *Miranda* rights in writing. RA, tab 31 at 2-4 (Dec. & Order).

[26]    Construed in the light most favorable to Camacho, the trial court's findings of fact are not clearly erroneous. *See Camacho*, 2004 Guam 6 ¶ 28. And we find no error in the trial court's legal analysis. The trial court considered certain facts to be relevant and evaluated these facts as the totality-of-the-circumstances test required. *See Santos*, 1999 Guam 1 ¶ 34 (citing *Rothman*, 492 F.2d at 1264). The People argue the trial court considered "separate instances that have no bearing on the validity and voluntariness of the consent." Appellant's Br. at 21. But a "totality of the circumstances" analysis requires balancing relevant factors. *Santos*, 1999 Guam 1 ¶ 42. At a suppression hearing, the trial court is "free to consider all evidence" and "should receive and properly weigh evidence based on his [or her] judgment and experience." *Id.* ¶¶ 18-19. Because the trial court is in the best position to weigh and determine the credibility of evidence received at a suppression hearing, *id.* ¶ 19, "[r]ulings on relevancy are best left to the trial court which hears the evidence," *Fenwick v. Watabe Guam, Inc.*, 2009 Guam 1 ¶ 65. It has long been settled that "[a] trial court has broad discretion when determining the relevancy of evidence and its conclusion will not be disturbed absent a clear abuse of discretion." *People v. Taitano*, D.C. No. CR86-

00025A, 1987 WL 109881, at *3 (D. Guam App. Div. July 16, 1987), *aff'd*, 849 F.2d 431 (9th Cir. 1988); *see also Ptack v. Ptack*, 2015 Guam 5 ¶ 31. The determination that the "separate instances" were relevant was within the trial court's discretion, and we decline to disturb that conclusion.

[27]   Furthermore, our jurisprudence on voluntariness does not set the type of temporal parameters urged by the People.[6] After *Santos*, this court has not supplemented the totality-of-the-circumstances analysis with additional limitations. We have primarily listed the Eighth Circuit factors for consideration and have applied those factors to the cases before us. *See Cundiff*, 2006 Guam 12 ¶ 49; *see generally People v. Taman*, 2013 Guam 22 ¶ 16. We cannot find the origin of such a limitation in District Court of Guam Appellate Division case law, which does not provide additional temporal parameters beyond what federal courts have held. *See People v. Ngirangas*, D.C.A. No. 84-00051A, 1986 WL 68516, at *2 (D. Guam App. Div. Feb. 14, 1986) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973); *United States v. Salvador*, 740 F.2d 752, 757 n.3 (9th Cir. 1984)), *rev'd on other grounds*, 806 F.2d 895 (9th Cir. 1986); *see also People v. Palomo*, No. CR-76-09A, 1978 WL 13492, at *2 (D. Guam App. Div. Mar. 13, 1978) (citing *Schneckloth*, 412 U.S. 218). Trial courts are empowered to render judgments regarding voluntariness without limiting their analysis to a precise moment, or any directive on whether certain facts affect the voluntariness of the consent as a matter of law.

[28]   Finally, many courts—including the United States Supreme Court—have properly considered repeated requests for consent in evaluating voluntariness under the totality of the circumstances. In *Schneckloth v. Bustamonte*, the U.S. Supreme Court stated, "[I]t is only by

---

[6] During oral argument, when responding to the court's question regarding authority for a temporal limitation on the trial court's totality-of-the-circumstances test, the People referenced "the temporal proximity" prong of a test in *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975). Oral Arg. at 10:17:16-10:18:00 (Mar. 3, 2023). However, this prong is a factor for the trial court to consider and not a limitation as the People assert. The *Brown* test is used to determine whether the initial taint of unlawful arrest has been purged so as to allow evidence to be admitted. *Brown*, 422 U.S. at 603-04. The *Brown* test is not used to evaluate the voluntariness of consent—the issue upon which this court was inquiring.

analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced. It is this careful sifting of the unique facts and circumstances of each case that is evidenced in our prior decisions involving consent searches." 412 U.S. at 233. *Schneckloth* relied on *Davis v. United States*, 328 U.S. 582 (1946), wherein the Court looked to all the circumstances surrounding a defendant's consent to affirm a judgment of conviction, including "the fact that the initial refusal to turn the [incriminating evidence] over was soon followed by acquiescence in the demand." *Schneckloth*, 412 U.S. at 233 (quoting *Davis*, 328 U.S. at 593).

[29]    In applying *Schneckloth*'s totality-of-the-circumstances test, several courts have found that "initial refusal is an important factor in assessing whether a subsequent consent is voluntary." *People v. Cardenas*, 604 N.E.2d 953, 956 (Ill. App. Ct. 1992); *see also State v. O'Neill*, 62 P.3d 489, 504 (Wash. 2003) (en banc) (collecting cases); *Florida v. Royer*, 460 U.S. 491, 517 (1983) (Blackmun, J., dissenting) (conceding that "judged on the totality of the circumstances" defendant's consent to search would have been involuntary had he "initially refused to consent to the search of his suitcases, and had the officers continued the detention in the hope that he would change his mind"). We repeat that the factors we have cited from the Eighth and Ninth Circuits are not exhaustive, and we note that tests from other circuits consider as a factor whether consent was prompted by repeated requests. *See, e.g.*, *United States v. Raibley*, 243 F.3d 1069, 1076 (7th Cir. 2001) ("Relevant factors include . . . whether his consent was immediate, or was prompted by repeated requests by the authorities . . . ."); *United States v. Pulvano*, 629 F.2d 1151, 1157 (5th Cir. 1980) ("The fact that appellant refused to give his consent to the search prior to his arrest, while a factor to be considered in evaluating the voluntariness of his later decision to give consent, is not determinative.").

**[30]** A trial court may properly consider facts, such as a defendant's refusal to consent to a search before his arrest and his refusal to waive his rights following an arrest, when it weighs the totality of the circumstances. We conclude the trial court did not have to differentiate between "instances" when it performed a totality-of-the-circumstances test.

### V. CONCLUSION

**[31]** Construed in the light most favorable to Camacho, the trial court's findings of fact were not clearly erroneous, and we find no error in the trial court's application of those facts to the law. The People have failed to meet their burden of demonstrating Camacho voluntarily gave consent under the totality of the circumstances. When evaluating the totality of the circumstances, a court should balance the factors surrounding consent that it finds relevant; no single factor is dispositive. Relevant factors are guideposts which should not be applied mechanically to the facts of a case. A trial court's totality-of-the-circumstances analysis is not temporally limited to a precise moment. Rather, a trial court receives and weighs evidence according to its judgment and experience and, ultimately, determines what facts are relevant to the analysis.

**[32]** We **AFFIRM** the Decision and Order of the trial court granting Camacho's motion to suppress and **REMAND** for further proceedings not inconsistent with this opinion.


/s/
KATHERINE A. MARAMAN
Associate Justice

/s/
JOHN A. MANGLONA
Justice *Pro Tempore*


/s/
F. PHILIP CARBULLIDO
Presiding Justice