
**Filed**
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

## PEOPLE OF GUAM,
Plaintiff-Appellant,

**v.**

## JOSEPH QUICHOCHO TAIMANGLO II
## (aka Joseph Quichocho Taimanglo; aka Baby Joe;
## aka Joseph Quintanilla Taimanglo II),
Defendant-Appellee.

Supreme Court Case No. CRA24-009
Superior Court Case No. CF0428-23

## OPINION

## Cite as: 2025 Guam 7

Appeal from the Superior Court of Guam
Argued and submitted on February 21, 2025
Hagåtña, Guam

Appearing for Plaintiff-Appellant:
Nathan M. Tennyson, *Esq.*
Acting Deputy Attorney General (former)
Office of the Attorney General
Appellate & Writing Division
590 S. Marine Corps Dr., Ste. 801
Tamuning, GU 96913

Appearing for Defendant-Appellee:
Peter J. Santos, *Esq.*
Assistant Alternate Public Defender
Alternate Public Defender
MVP Commercial Bldg.
777 Route 4, Ste. 109
Sinajana, GU 96910

**E-Received**
10/23/2025 3:45:47 PM

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**CARBULLIDO, J.:**

[1]      Defendant-Appellee Joseph Quichocho Taimanglo II was the passenger of a vehicle involved in a serious crash after a police chase.  The vehicle veered out of control, went airborne, did two 360-degree spins, and hit a concrete utility pole.  Taimanglo exited the vehicle and began running before being detained—but not arrested—by a police officer.  Another officer investigating the crash scene found a cell phone on the ground near the passenger side of the vehicle.  When Taimanglo saw the officer holding the phone he said, "That's my cell phone."  Although Taimanglo was detained, neither officer believed they had probable cause to arrest him.  Despite Taimanglo claiming ownership of the phone, the officer removed the phone's case, revealing a small baggie of methamphetamine.  Taimanglo was charged with Possession of a Schedule II Controlled Substance (as a Third Degree Felony).  Taimanglo successfully moved to suppress the evidence seized, arguing his Fourth Amendment rights were violated.

[2]      Plaintiff-Appellant People of Guam (the "People") appeal the trial court's ruling, arguing that if Taimanglo had any reasonable expectation of privacy in his phone, it was so diminished that it was not violated by the officer's search of his phone.  The People also argue the trial court applied the wrong legal standard.  Alternatively, they claim that even if the search was illegal, discovery of the contraband was inevitable.  We conclude the trial court applied the correct legal standard.  Furthermore, the People did not preserve their lost property and inevitable discovery claims for appellate review.

[3]      We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

[4]     Taimanglo was the passenger of a white Volkswagen Jetta that was evading police. Guam Police Department ("GPD") officers began chasing the white sedan after the driver allegedly sped off from a traffic stop. Multiple police officers driving multiple police cruisers engaged in the chase, including Officers Isaiah Ibanez and Wilfred Skilling. As the chase wound through Dededo and into Yigo, Officer Skilling became the lead car in the chase.

[5]     Officer Ibanez testified that the vehicles involved in the chase were going faster than 60 miles per hour. Near the front gate of Andersen Air Force Base, the driver of the white sedan lost control after attempting to turn and crashed into the base of a utility pole. Officer Skilling testified that the vehicle "went airborne briefly, spun around two times, and then came to a complete stop." Transcript ("Tr.") at 40 (Hr'g, Oct. 26, 2023). Officer Skilling testified that Taimanglo exited the crashed vehicle from the passenger side door and began to run toward the base. Officer Skilling chased Taimanglo and eventually detained him. Both officers testified that, at this time, Taimanglo was not under arrest, and neither officer believed they had probable cause to arrest him for any offense.

[6]     Meanwhile, Officer Ibanez began to investigate the scene of the crash. Officer Ibanez found two cell phones—one with a brown case—on the ground outside the passenger side of the white sedan. Officer Ibanez gave contradictory testimony at the suppression hearing about what happened next. Officer Ibanez's testimony on direct examination contradicted what he wrote in his police report. *Id.* at 27–28 (discussing timing of removing phone case). Faced with these contradictions, the trial court made these findings of fact:

> 8. Officer Ibanez decided to remove the cover from the cell phone. He did so because in his experience, individuals sometimes leave their ID or bank cards inside the case of their cell phone.
>
> . . . .

12. Immediately after Officer Ibanez began to remove the cell phone's cover, Officer Skilling appeared nearby, escorting Defendant to one of the patrol cars.

13. When Defendant saw Officer Ibanez holding the cell phone with the cover on it, Defendant stated something like "yeah, that's my cell phone."

14. At this exact moment, according to the testimonies of Officer Skilling and Officer Ibanez, neither officer believed they had probable cause to make an arrest on Defendant.

15. Officer Ibanez nonetheless opened the cell phone case and found a "small clear resealable baggie" containing suspected methamphetamine.

Record on Appeal ("RA"), tab 34 at 2–3 (Dec. & Order, Apr. 3, 2024) (citations omitted). After a field test "yielded a 'presumptive positive'" for methamphetamine, Officer Skilling arrested Taimanglo. *Id.* at 3.

**[7]** Taimanglo was charged with Possession of a Schedule II Controlled Substance (as a Third Degree Felony). Taimanglo moved to suppress the evidence seized, arguing Officer Ibanez's search of his phone violated the Fourth Amendment. The People argued that the protections of the Fourth Amendment did not apply because Taimanglo had abandoned his phone, or, alternatively, it was a valid inventory search.

**[8]** The trial court made these findings about the inventory search argument:

9. Officer Ibanez testified that whenever he is investigating a potential crime scene, he "conducts an inventory" and collects the personal property he finds.

10. Officer Ibanez testified that this practice is pursuant to established GPD policy, which allows officers to confiscate items either for "safekeeping or evidence."

11. No written versions of the purported GPD policy (or policies) in question have been brought before the Court.

RA, tab 34 at 2–3 (Dec. & Order) (citations omitted).

**[9]** After the suppression hearing, the trial court granted the motion to suppress. The trial court concluded that the evidence did not show that Taimanglo abandoned his cell phone. Relying on

Ninth Circuit precedent, the trial court stated, "Determining whether an object has been abandoned is primarily 'a question of intent,' as an abandonment 'must be voluntary.'" *Id.* at 5 (quoting *United States v. Stephens*, 206 F.3d 914, 917 (9th Cir. 2000)). The court determined that although the People's burden of proof to show abandonment was unclear under federal case law, "two important factors" to consider were (1) "denial of ownership" and (2) "physical relinquishment of the property." *Id.* (quoting *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986)). The court found that Taimanglo "never denied ownership of the cell phone" and that this factor weighed against finding abandonment. *Id.* On the second factor, the court found that the facts did not establish that Taimanglo "intentionally relinquished" his phone:

> Neither Officer Ibanez nor Officer Skilling testified that they saw Defendant drop, throw, or otherwise intentionally give up control of the phone. And while in some cases it may [be] reasonable to assume a cell phone could only be away from a person's body by a voluntary act, the facts here show that Defendant had just been involved in a serious car crash. The testimony of the officers indicates that in the crash, the vehicle veered out of control, went "airborne," and did two "360 spins." The cell phone was then found very near to the crash site. Under these circumstances, the cell phone could have been inadvertently ejected from the vehicle during the crash, or inadvertently lost as Defendant exited from the vehicle.

*Id.* at 6 (citation omitted). The trial court held that the People failed to prove abandonment—whether the standard was "clear and convincing evidence" or "a preponderance of the evidence"—because "it is at least as likely that Defendant inadvertently lost his cell phone during or immediately after the car crash as that he intentionally abandoned it before fleeing from police." *Id.* The trial court concluded that "a person may not abandon property for Fourth Amendment purposes by mere loss, carelessness, or accident." *Id.* (quoting *United States v. Sparks*, 806 F.3d 1323, 1353 (11th Cir. 2015) (Martin, C.J., dissenting)).

[10] The court then accepted the People's characterization of the search of the phone as an "inventory search" but found that it violated the Fourth Amendment. *Id.* at 7–9. The trial court stated that not "all inventory searches are constitutionally permissible" and concluded that, to be

valid, an inventory search must be "conducted in good-faith according to standardized criteria, such as a police-department uniform inventory search policy, and this criterion must curtail the discretion of the searching officer so as to prevent searches from becoming a ruse for a general rummaging in order to discover incriminating evidence." *Id.* at 7 (quoting *United States v. Stitt*, 382 F. App'x 253, 255 (4th Cir. 2010)). The court emphasized that nearly all the inventory search cases it reviewed dealt with searches that occurred after a defendant had been arrested, and that the People did not explain how a pre-arrest search could still meet the exception. *Id.* The court emphasized that "an inventory search must be conducted pursuant to a valid departmental policy" and that "no written version of that policy was presented to the Court, and the testimony suggested that this policy is extremely broad in scope." *Id.* at 7–8.

[11]    The trial court concluded that it did not "have sufficient evidence to determine whether there are appropriate safeguards on the GPD policy that apparently authorized this search. And where such safeguards cannot be ascertained, the inventory search cannot be upheld as an exception to the Fourth Amendment." *Id.* at 9. The court stated it was "reluctant to apply an exception to the Fourth Amendment, not previously recognized by the Supreme Court of Guam, without either persuasive case law supporting the application or at least a clear presentation of GPD's inventory search policy." *Id.*

[12]    The People timely appealed the suppression of the evidence.

## II. JURISDICTION

[13]    We have jurisdiction over an appeal from a Superior Court order granting a motion to suppress evidence. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 119-36 (2025)); 7 GCA §§ 3107, 3108(b) (2005); 8 GCA §§ 130.20(a)(6), 130.40 (2005).

//

//

### III. STANDARD OF REVIEW

**[14]**    Our review of a trial court's suppression of evidence is two-part: the "court's factual findings are reviewed for clear error" while its application of the law to the facts is reviewed *de novo*. *People v. Viva*, 2023 Guam 24 ¶ 12. "When the People appeal a decision granting a motion to suppress, the facts are construed in the light most favorable to the defendant." *Id.* (citing *People v. Camacho*, 2023 Guam 9 ¶ 13). "A finding is clearly erroneous when, even though some evidence supports it, the entire record produces the definite and firm conviction that the court below committed a mistake." *Id.* (quoting *People v. Mansapit*, 2016 Guam 30 ¶ 8). "We accept the trial court's findings of fact unless the entire record makes clear that a mistake was made." *Id.*

**[15]**    "Whether property has been abandoned within the meaning of the Fourth Amendment is an issue of fact reviewed for clear error." *United States v. Gonzales*, 979 F.2d 711, 712 (9th Cir. 1992).

**[16]**    A preserved claim of inevitable discovery presents a mixed question of law and fact, which we review for clear error. *United States v. Lang*, 149 F.3d 1044, 1047 (9th Cir.), *amended by*, 157 F.3d 1161 (9th Cir. 1998). However, given the fact-sensitive nature of the inquiry, we will decline to address inevitable discovery arguments not raised by the government in the trial court when it appeals a decision granting a motion to suppress.

### IV. ANALYSIS

**[17]**    The People argue that if the Fourth Amendment applies to lost property, it was not violated in this case, and that the trial court "applied the facts of this case to an incorrect legal standard." Appellant's Br. at 18 (Sep. 9, 2024). The People have also changed their inventory search argument on appeal; they no longer claim the search of Taimanglo's phone was a valid inventory search. *See* Appellant's Reply Br. at 3 (Nov. 22, 2024). Instead, they claim that even if the

evidence were the fruit of an illegal search, it inevitably would have been discovered during a later inventory search. Appellant's Br. at 19. The arguments raised by the People lack merit.

[18]    "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). The trial court applied the correct legal standard when it concluded this government intrusion into Taimanglo's privacy was unreasonable. Furthermore, the People's arguments about lost property and inevitable discovery are raised for the first time on appeal. We decline to address them.

[19]    Justice Thurgood Marshall once observed, "Because the strongest advocates of Fourth Amendment rights are frequently criminals, it is easy to forget that our interpretations of such rights apply to the innocent and the guilty alike." *United States v. Sokolow*, 490 U.S. 1, 11 (1989) (Marshall, J., dissenting). This case presents an example of the "general, exploratory rummaging in a person's belongings" the Fourth Amendment was designed to prevent. *See United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). We affirm the trial court's suppression of the evidence seized after an illegal search.

## A. The Trial Court Applied the Correct Legal Standard for Abandonment under the Fourth Amendment

[20]    The People claim, "The Trial Court applied the facts of this case to an incorrect legal standard." Appellant's Br. at 18. They argue the trial court erred when it "focused solely on Mr. Taimanglo's lack of subjective intent to abandon his cell phone, rather than the objective facts indicating Mr. Taimanglo's abandonment of his reasonable expectation of privacy in the cell phone." *Id.* at 15. They claim the correct standard is "whether there exists a reasonable and objective expectation of privacy, as opposed to an analysis of ownership rights." *Id.* at 18. Apparently, the People believe the correct standard for abandonment under the Fourth Amendment is the test articulated by California courts. *See id.* at 15–18 (citing *People v. Shepherd*, 28 Cal.

Rptr. 2d 458 (Ct. App. 1994); *In re Baraka H.*, 8 Cal. Rptr. 2d 221 (Ct. App. 1992); *People v. Juan*, 221 Cal. Rptr. 338 (Ct. App. 1985)). However, these arguments overlook the trial court's correct citation and application of Ninth Circuit precedent to determine whether property is abandoned for Fourth Amendment purposes. We reject the People's arguments and adopt the Ninth Circuit standard applied by the trial court.

[21]     The Fourth Amendment protects the right of people to be secure in their "effects" against unreasonable search and seizure. U.S. Const. amend. IV; 48 U.S.C.A. § 1421b(u) (extending Fourth Amendment to people of Guam); *see also* 48 U.S.CA. § 1421b(c). "Cell phones plainly qualify as 'effects' under the meaning of the Fourth Amendment." *In re Application for Tel. Info. Needed for a Crim. Investigation*, 119 F. Supp. 3d 1011, 1019 (N.D. Cal. 2015). "Since the time of its framing, 'the central concern underlying the Fourth Amendment' has been ensuring that law enforcement officials do not have 'unbridled discretion to rummage at will among a person's private effects.'" *United States v. Wurie*, 728 F.3d 1, 14 (1st Cir. 2013) (quoting *Arizona v. Gant*, 556 U.S. 332, 345 (2009)), *aff'd sub nom.*, *Riley v. California*, 573 U.S. 373 (2014). "Warrantless searches and seizures are per se unreasonable, subject to a few specifically established and well-delineated exceptions." *Camacho*, 2023 Guam 9 ¶ 15. One such exception is abandonment. *Abel v. United States*, 362 U.S. 217, 241 (1960) ("There can be nothing unlawful in the Government's appropriation of . . . abandoned property.").

[22]     The U.S. Supreme Court has long recognized that the Fourth Amendment does not protect abandoned property, *e.g.*, *id.*; *Hester v. United States*, 265 U.S. 57, 58 (1924), but it has yet to articulate a test for determining whether property is abandoned for Fourth Amendment purposes. No single test has been universally adopted to define when property is considered abandoned. The Ninth Circuit has stated:

> The inquiry should focus on whether, through words, acts or other objective indications, a person has relinquished a reasonable expectation of privacy in the property at the time of the search or seizure. This determination is to be made in light of the totality of circumstances, and two important factors are denial of ownership and physical relinquishment of the property.

*Nordling*, 804 F.2d at 1469 (citations omitted). Generally, the federal courts have analyzed abandonment under the expectation of privacy framework established by *Katz v. United States*, 389 U.S. 347 (1967), that looks at subjective and objective privacy expectations. *E.g.*, *United States v. Sledge*, 650 F.2d 1075, 1080 (9th Cir. 1981) ("If one who has abandoned property from all outward appearances in fact has retained a subjective expectation of privacy, then a search of the property is nevertheless valid if that expectation is intrinsically unreasonable . . . ."); *United States v. Chavez*, 985 F.3d 1234, 1240 (10th Cir. 2021); *United States v. Ramirez*, 67 F.4th 693, 696–98 (5th Cir.) ("We are unaware of any cases expounding on the interplay between abandonment and *Jones*'s property-rights rubric." (citing *United States v. Jones*, 565 U.S. 400 (2012))), *revised and superseded*, No. 22-50042, 2023 WL 5925902 (5th Cir. May 10, 2023). The government has the burden of proving abandonment by a preponderance of the evidence. *United States v. Linn*, 880 F.2d 209, 214 (9th Cir. 1989) ("Any exception to the Fourth Amendment warrant requirement must be proven by a preponderance of evidence, and this burden is upon the government."), *abrogated on other grounds by*, *Florida v. White*, 526 U.S. 559 (1999).

[23]     The People's arguments about abandonment focus on whether the trial court gave enough consideration to reasonable expectations of privacy. The People argued that the "keystone of this appeal is the meaning of 'abandonment' under the Fourth Amendment." Appellant's Br. at 6. But then, in their reply, the People claimed they "do not argue that Mr. Taimanglo abandoned his phone, nor do they claim he intended to abandon it." Reply Br. at 1. They argue, "Taimanglo's departure from the scene, coupled with his failure to retrieve his lost property, undermines any reasonable expectation of privacy in external portions of the phone potentially containing

identifying information." *Id.* at 2. However, whether Taimanglo abandoned his phone is a threshold issue for determining if his expectation of privacy was reasonable.

[24] The trial court relied on Ninth Circuit precedent to evaluate the People's claim that Taimanglo's phone was abandoned. *See* RA, tab 34 at 5 (Dec. & Order) (quoting *Nordling*, 804 F.2d at 1469). Although the People argue that the trial court applied the wrong legal standard, they fail to explain how the trial court misapprehended the Ninth Circuit's test or why the Ninth Circuit standard is incorrect. The trial court correctly articulated the legal standard adopted in the Ninth Circuit and several other jurisdictions, *e.g.*, *United States v. Crumble*, 878 F.3d 656, 659 (8th Cir. 2018); *United States v. Basinski*, 226 F.3d 829, 837 (7th Cir. 2000); *State v. Prior*, 973 N.W.2d 726, 744 (Neb. Ct. App. 2022); *People v. Pitman*, 813 N.E.2d 93, 105 (Ill. 2004); *Knight v. Commonwealth*, 734 S.E.2d 716, 722 (Va. Ct. App. 2012); *State v. Valles*, 2019 ND 108, ¶ 7, 925 N.W.2d 404, 408.

[25] The standard the People advance was discussed by the California Supreme Court in 2008:

> "[T]he intent to abandon is determined by objective factors, not the defendant's subjective intent. 'Abandonment is primarily a question of intent, and intent may be inferred from words, acts, and other *objective* facts. Abandonment here is not meant in the strict property-right sense, but rests instead on whether the person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search.'"

*People v. Parson*, 187 P.3d 1, 11 (Cal. 2008) (alteration in original) (internal citations omitted) (quoting *People v. Daggs*, 34 Cal. Rptr. 3d 649, 652 (Ct. App. 2005)). Contrary to the People's arguments, nothing about the California and Ninth Circuit standards are necessarily incompatible. California courts have fit *Nordling*'s "disclaimer of ownership" factor into their standard. *E.g.*, *In re Baraka H.*, 8 Cal. Rptr. 2d at 226 (stating disclaimer cases can be viewed through the lens of whether society will "recognize an asserted privacy expectation as 'reasonable'" (citing cases including *Nordling*, 804 F.2d at 1469–70)). Although framed in terms of privacy, California cases

also consider whether a defendant physically relinquished the property. *See Daggs*, 34 Cal. Rptr. 3d at 654 ("[W]hen the owner fails to take normal precautions after leaving property unattended in a public place, the owner has relinquished a reasonable expectation of privacy . . . ."). The People seem to argue that by relying on the Ninth Circuit standard, the trial court focused solely on subjective intent. *See* Appellant's Br. at 15. But this is incorrect, as the Ninth Circuit has held that abandonment is to be determined by reference to the objective manifestation of an individual's intent. *United States v. Kendall*, 655 F.2d 199, 200 (9th Cir. 1981). The variation in how different courts articulate the legal standard to determine abandonment does not mean the trial court erred in relying on the Ninth Circuit's standard.

[26]     A review of abandonment cases underscores the validity of the Ninth Circuit's standard (as articulated in *Nordling*). The Seventh Circuit explained there are generally three types of abandonment cases: (1) those "characterized by the presence of a fleeing defendant who relinquishes an object to make his flight easier or because discarding the item might make it easier for him to later claim that he never possessed it," (2) "garbage cases" where "the defendant places material in or near a refuse receptacle that is readily accessible to the public, and in which he usually places other discarded materials," or (3) where "the defendant is usually caught red-handed with or near a container of contraband, whereupon he denies that the container or its contents are his." *Basinski*, 226 F.3d at 837 (citations omitted). These three categories of cases can be further reduced to either physical relinquishment of property or denial of ownership. We agree with the Seventh Circuit that when a case does not fit into the rubric of physical relinquishment or denial of ownership, it "strongly suggests that no abandonment occurred."[1] *See id.*

---

[1] This is not to say either factor is dispositive. Courts must still evaluate the totality of the circumstances. As the Ninth Circuit has said: "[N]one of our 'abandonment' cases has held that mere disavowal of ownership, without more, constitutes abandonment of a person's reasonable expectation of privacy in that property." *United States v. Lopez-Cruz*, 730 F.3d 803, 809 (9th Cir. 2013).

[27]     The People were free to argue before the trial court that this case fit into the category of cases characterized by a fleeing defendant who discards an item.  But the trial court's decision that the People failed to meet their burden on this point does not mean the court applied the wrong legal standard.  The trial court accurately articulated the Ninth Circuit standard, and on appeal the People fail to identify what precisely was incorrect about this legal standard.  The trial court's articulation of the first factor under *Nordling* was correct.  The People seem to imply that the trial court used an incorrect standard for the physical-relinquishment factor when it focused on whether Taimanglo "*intentionally* relinquished his cell phone" and whether the facts support an inference of a voluntary act.  *See* Appellant's Br. at 15 (quoting RA, tab 34 at 6 (Dec. & Order)).  But the trial court relied on language from another Ninth Circuit case, *United States v. Stephens*, 206 F.3d 914 (9th Cir. 2000), where the court stated: "'[A]bandonment is a question of intent.'  'An abandonment must be voluntary, and an abandonment that results from Fourth Amendment violation cannot be voluntary.'"  206 F.3d at 917 (first quoting *Nordling*, 804 F.2d at 1469; and then quoting *United States v. Austin*, 66 F.3d 1115, 1118 (10th Cir. 1995)); *see also* RA, tab 34 at 5 (Dec. & Order) (quoting *Stephens*, 206 F.3d at 917).

[28]     Whether property is abandoned for Fourth Amendment purposes is an issue of first impression in this court.  Because we review the trial court's legal conclusions *de novo*, we are not bound to adopt the Ninth Circuit standard used by the trial court.  Although the People cite a handful of California cases that describe the abandonment standard differently, they do not explain why this court should adopt the California test in place of the Ninth Circuit standard, nor do they adequately articulate why the Ninth Circuit standard is wrong.[2]  The People fail to explain why

---

[2] The People do not challenge the trial court's finding that the phone was not abandoned.  This undercuts the People's argument, as it seems to be a concession that the trial court would have reached the same conclusion under the California standard.  The People make no attempt to show the trial court committed clear error when it found "it

relying on the Ninth Circuit standard was an error. We adopt the Ninth Circuit standard relied on by the trial court as it is a correct articulation of the abandoned property doctrine. We find no error.

**B. We Do Not Address the Other Issues the People Raise for the First Time on Appeal**

[29]     "[T]he People bear the burden of proof when a warrantless search or seizure occurs." *People v. Calhoun*, 2014 Guam 26 ¶ 9 (quoting *People v. Santos*, 1999 Guam 1 ¶ 51). When the People appeal the suppression of evidence, we will generally decline to consider arguments not presented to the trial court. *See Camacho*, 2023 Guam 9 ¶ 16 n.3.

### 1. The People did not mention lost property in the trial court, and we decline to address it on appeal

[30]     The People raise for the first time on appeal the theory that Taimanglo's phone was "lost" rather than "abandoned." In their reply brief, the People distance themselves from the argument that Taimanglo's phone was abandoned and outside the protections of the Fourth Amendment; they instead claim his diminished expectation of privacy in lost property was not violated. Reply Br. at 1–2. "As a general rule, this court will not evaluate an argument which was not presented for consideration to the trial court." *People v. Mendiola*, 2015 Guam 26 ¶ 26. This concern is heightened in the Fourth Amendment context, where, "[e]ver mindful of the Fourth Amendment and its history," we are tasked with scrutinizing "practices that permit 'police officers unbridled

---

is at least as likely that Defendant inadvertently lost his cell phone during or immediately after the car crash as that he intentionally abandoned it before fleeing from police." Record on Appeal ("RA"), tab 34 at 6 (Dec. & Order, Apr. 3, 2024); *see also United States v. Sinkler*, 91 F. App'x 226, 232 n.8 (3d Cir. 2004) (holding that where the government searched a backpack found outside a vehicle involved in a high speed crash resulting from police chase, the government was required to prove defendant intended to toss the bag away, because "it seems just as likely that the impact of the collision caused the backpack to fly from the Jeep. If that is the case, it would be troubling to find that [defendant] somehow 'abandoned' it and gave up his Fourth Amendment rights with respect to its contents."). Because the trial court found that the People failed to prove the cell phone was abandoned, the cases cited by the People that stand for the proposition that police can search abandoned property are unavailing. *See* Appellant's Br. at 10–12 (Sep. 9, 2024).

discretion to rummage at will among a person's private effects.'" *See Byrd v. United States*, 584 U.S. 395, 403 (2018) (quoting *Gant*, 556 U.S. at 345).

[31]     Some courts have recognized that an expectation of privacy may be diminished in lost property. *E.g.*, *State v. Hamilton*, 2003 MT 71, ¶ 26, 314 Mont. 507, 67 P.3d 871; *State v. Ching*, 678 P.2d 1088, 1092 (Haw. 1984) ("Although owners of lost property must expect some intrusion by finders, common sense dictates that they do not forfeit all expectations of privacy in their property as though they had intentionally abandoned it."). But "state courts that have addressed searches of lost property have *uniformly* held that persons retain a reasonable expectation of privacy in personal property that is lost or mislaid 'diminished to the extent that the finder may examine the contents of that item as necessary to determine the rightful owner.'" *Commonwealth v. Raboin*, No. Criminal Action No. 06-01180, 2008 WL 2738599, at *3 (Mass. Super. Ct. June 20, 2008) (emphasis added) (quoting *Hamilton*, 2003 MT 71, ¶ 26); *see also  Ching*, 678 P.2d at 1092–93 ("When lost property is turned in to the police, their paramount goal must be to ascertain its ownership and return it to the owner in substantially the same condition as it was received. . . . [P]olice may validly search lost property to the extent necessary for identification purposes."); *State v. Lewis*, 474 P.3d 907, 911–12 (Or. Ct. App. 2020) (prohibiting searches unless it is objectively reasonable to believe the property is lost); *Valles*, 2019 ND 108, ¶ 15 (holding that searches of lost property are reasonable to the extent the police take actions one might expect from any person who finds a lost item).

[32]     The trial court made no findings of fact about whether Taimanglo's phone was lost. Nor did it reach any conclusions about whether any intrusion into Taimanglo's expectation of privacy was reasonable. This is because the People never made these arguments in the trial court; they relied exclusively on abandonment and inventory search theories. The only reference to lost property was by the defense: "[T]here's no caselaw that says once the property is misplaced then

you all of a sudden completely lost ownership over that property. That would be an absurd result." Tr. at 5 (Hr'g, Oct. 26, 2023). The People claim on appeal that Officer Ibanez was looking for a "serial number in order to assist with identifying the owner," *see* Appellant's Br. at 7–8, 16, but a review of the suppression hearing transcript shows that testimony about serial numbers related to the People's argument that a valid inventory search occurred, *see* Tr. at 53 (Hr'g, Oct. 26, 2023) (arguing "everything at the crime scene is subject to the inventory of the officers"); *see also id.* at 18–20, 30–31 (claiming that GPD inventory policy authorizes police to seize and search any personal property found at the scene of a crash for "safekeeping"). The *post hoc* justification that a "reasonable inquiry to identify the owner," *see* Reply Br. at 3, of a cell phone includes quizzing them on its serial number was not preserved in the trial court, *see* Appellant's Br. at 7–8, 16.

[33]     Generally, "this court will not address an argument raised for the first time on appeal." *Univ. of Guam v. Guam Civ. Serv. Comm'n*, 2002 Guam 4 ¶ 20. The People's concession of weak legal arguments is welcome, yet it does not change that the lost property theory is raised for the first time on appeal. We decline to address the merits of the People's lost property argument raised for the first time on appeal.

### 2. Inevitable discovery was not preserved for appellate review, and we decline to address it

[34]     The People make the conclusory argument that "[e]ven if the methamphetamine was discovered as the result of an illegal search and otherwise inadmissible under the exclusionary rule, it would have been discovered independently later during an inventory search. As a result, it need not be excluded under the 'inevitable discovery' exception." Appellant's Br. at 19. The People did not adequately preserve this argument. The only mention of the inevitable discovery doctrine by the People was in passing at the end of the suppression hearing. After arguing throughout the hearing that the search was a valid inventory search, the prosecutor concluded, "[I]t

was an inventory search. The officer was -- it was also an inevitable discovery and therefore the search was lawful and the defendant's Motion should be denied." Tr. at 54 (Hr'g, Oct. 26, 2023).

[35]    At the trial level, the burden was on the People to show the inevitable discovery of evidence obtained by unlawful means. *Nix v. Williams*, 467 U.S. 431, 444–45, 444 n.5 (1984). Courts have generally recognized that "[t]he inevitable-discovery exception excuses warrantless searches where the government proves 'by a preponderance of the evidence' that unlawfully obtained evidence 'would have been discovered inevitably [through] lawful means.'" *E.g.*, *United States v. Holmes*, 121 F.4th 727, 737 (9th Cir. 2024) (second alteration in original) (quoting *United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir. 1986)); *see also People v. Santos*, 2003 Guam 1 ¶ 56 (referencing inevitable discovery). This inquiry "focuses on demonstrated historical facts capable of ready verification or impeachment." *Nix*, 467 U.S. at 444 n.5. "[W]hether 'historical facts' establish that lawful discovery of the evidence was inevitable is a case-specific inquiry." *Holmes*, 121 F.4th at 739. Because of the fact-intensive nature of inevitable discovery, courts often refuse to allow the Government to raise the argument for the first time on appeal when they seek to overturn the suppression of evidence. *E.g.*, *id.* ("At no point previously did the Government argue inevitable discovery . . . . Therefore, these arguments were forfeited."); *People v. Chapman*, 274 Cal. Rptr. 47, 50–51 (Ct. App. 1990) (holding that inevitable discovery claim raised by People for first time on appeal turned on determination of facts not presented to trial court and was not subject to appellate review). Because the People did not attempt to meet their burden to establish inevitable discovery before the trial court, we will not review the inevitable discovery argument.

[36]    We conclude that the People have forfeited their inevitable discovery argument. Despite bearing the burden of proving inevitable discovery at the suppression hearing, it was not raised in the People's opposition to the suppression motion. Inevitable discovery appears to have been an afterthought; its first and only mention by the prosecutor was in their closing sentence at the

suppression hearing. Because the People did not meaningfully argue inevitable discovery in the trial court, this court has no findings to aid its review of this mixed question of law and fact. *Cf. McKathan v. United States*, 969 F.3d 1213, 1232 (11th Cir. 2020) ("[T]he record lacks information that would allow us to assess the viability of an inevitable-discovery argument. Therefore, we cannot determine whether, as a legal matter, the government would have been permitted to search [defendant's] phone."). The prosecution's fleeting reference to inevitable discovery is insufficient to preserve this matter for appeal. *See In re People*, 2024 Guam 17 ¶ 38 ("To preserve a matter for appellate review, a party 'must unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits.'" (quoting *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 135 (3d Cir. 2023))).

[37]    Although we have the discretion to reach this forfeited issue, applying the doctrine would require too much speculation. As the Ninth Circuit explained: "Inevitability is the key. There can be 'no speculative elements' in showing that law enforcement would have obtained the evidence lawfully absent its unlawful actions." *Holmes*, 121 F.4th at 737. "[T]he doctrine requires that the fact or likelihood that makes the discovery inevitable arise from circumstances other than those disclosed by the illegal search itself." *United States v. Boatwright*, 822 F.2d 862, 864–65 (9th Cir. 1987). "Where the hypothetical next steps of an investigation are more discretionary and less procedural, inevitability may be lacking. . . . [T]he more leeway for decision-making, the harder it is to conclude, without speculation, that law enforcement *inevitably* would reach the same outcome." *Holmes*, 121 F.4th at 739 (citation omitted). As the California Court of Appeal has explained: "A violation of the Fourth Amendment may not be disregarded 'simply because the police, had they thought about the situation more carefully, *could* have come up with a lawful means of achieving their desired results.'" *People v. Hughston*, 85 Cal. Rptr. 3d 890, 899 (Ct.

App. 2008) (quoting *People v. Superior Court (Walker)*, 49 Cal. Rptr. 3d 831, 856 n.30 (Ct. App. 2006)).

[38]     Without the benefit of the trial court's findings, we would be left to speculate whether, and for what reasons, Taimanglo would have been arrested without the search. We would also be forced to speculate whether Taimanglo's phone would have been returned to him or kept in police custody. We would also be forced to speculate about the inevitability of discovery under GPD's inventory policy.[3] Even if we were inclined to reach inevitable discovery for the first time on appeal, the record before us is simply too sparse to address the inevitable discovery exception to the exclusionary rule. We are wary of the claim that police may seize personal property for "safekeeping" under the guise it is abandoned (or lost) while the owner is present and not under arrest. This seems to be the exact abuse the warrant requirement was designed to prohibit. *Cf. United States v. Suggs*, 998 F.3d 1125, 1132 (10th Cir. 2021) (stating warrant requirement of the Fourth Amendment was "the product of contemporary revulsion against a regime of general warrants that gave British officials carte blanche to search and seize property of American colonists"). Police do not have "unbridled discretion to rummage at will among a person's private effects," *Gant*, 556 U.S. at 345, even when they claim that ownership is uncertain, *e.g.*, *Hamilton*, 2003 MT 71, ¶ 46.

//

//

---

[3] The trial court found that the Guam Police Department's ("GPD") lost item policy was "extremely broad in scope." RA, tab 34 at 8 (Dec. & Order). Officer Ibanez testified that GPD policy is to "confiscate" personal property found at a crash site for "safekeeping," regardless of whether it is related to a crime. Transcript ("Tr.") at 18–20, 30 (Hr'g, Oct. 26, 2023). We sincerely doubt that GPD's policy granted officers carte blanche to seize all innocuous personal property from its owner for "safekeeping" at their own discretion without a warrant. Further, we doubt that such a policy could withstand Fourth Amendment scrutiny. *See, e.g.*, *Williams v. State*, 85 A.3d 367, 373 (Md. Ct. Spec. App. 2014) (holding that police had no justification to retain and further examine cell phone that was not an instrumentality of crime, fruit of crime, contraband, or evidence).

### V. CONCLUSION

[39]     The trial court concluded that the People failed to meet their burden of showing the warrantless search of Taimanglo's phone was reasonable. The legal standard applied by the trial court was correct, and the People do not challenge the factual finding that Taimanglo's cell phone was not abandoned. We do not address the arguments raised by the People for the first time on appeal. We cannot disregard a Fourth Amendment violation simply because the police *could* have achieved their desired results lawfully with more careful consideration. *See Hughston*, 85 Cal. Rptr. 3d at 899. Nor will we overturn a trial court's conclusion that the Fourth Amendment was violated based on theories of admissibility raised for the first time on appeal. We **AFFIRM**.


| /s/ | /s/ |
| :---: | :---: |
| F. PHILIP CARBULLIDO | KATHERINE A. MARAMAN |
| Associate Justice | Associate Justice |


| /s/ |
| :---: |
| ROBERT J. TORRES |
| Chief Justice |